**NATIONAL FLOOD INSURERS ASSOCIATION, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary, Department of Housing and Urban Development, Defendant.**

Civ. A. No. 77–2028.

United States District Court, District of Columbia.

Dec. 9, 1977.

Allen R. Snyder, Washington, D. C., for plaintiff.

Linda L. Pence, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., District Judge.

This is an action for declaratory and injunctive relief in which plaintiff, a voluntary, unincorporated association of 132 private property insurance companies, challenges a proposed Government takeover of the private insurance aspects of the Nation-al Flood Insurance Program pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.* The matter came before the Court for hearing on plaintiff's motion for a temporary restraining order or preliminary injunction. Given the nature and circumstances of the case, the Court deems it appropriate to consider plaintiff's application for both preliminary and final relief and to enter a ruling with respect thereto. For the reasons discussed below, the Court finds that there exists no basis for granting a preliminary or permanent injunction in this action and that the declaratory judgment sought is improper. The Court is persuaded that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.[1]

The National Flood Insurance Program (the "NFI Program") was established pursuant to the National Flood Insurance Act of 1968 (the "NFI Act"). Since June 6, 1969, plaintiff, the National Flood Insurance Association ("NFIA"), has participated with the United States Department of Housing and Urban Development ("HUD") in a cooperative government-industry joint venture under part A of the NFI Act, 42 U.S.C. §§ 4051–4056, providing a national program of flood insurance coverage and sharing with HUD in the financial risk of flood insurance losses. NFIA is an incorporated joint underwriting association and under the 1969 contract, flood insurance policies are issued in the name of NFIA, marketed by NFIA, and serviced by NFIA, through agreements with independent local property agents, brokers and regional servicing companies. The insurance aspects of the flood program under NFIA's management have not been unsuccessful. The 1969 contract has been renewed annually since its inception. The present contract expires effective December 31, 1977.

In 1976, NFIA and HUD began to suffer disagreements concerning the administration of the NFI program. Specific prob-

---

1. This memorandum opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

lems involved the general authority of the Secretary of HUD to construe the terms of the Standard Flood Insurance Policy, HUD's prior control over NFIA operational expenses, the accuracy of the financial data NFIA was generating, NFIA's refusal to agree to competitive bidding on the service contracts it awarded, and the data processing services provided NFIA. Negotiations toward a new HUD–NFIA agreement began in October 1976 and continued for almost four months.[2] In April, 1977, HUD announced its intention to maintain the 1969 contract and to supplement the contract with regulations. HUD issued proposed regulations on June 9, 1977. NFIA took the position that the proposed regulations were invalid and on July 5, 1977, notified HUD that NFIA would not renew the 1969 contract for another term.[3]

In light of the impasse reached with NFIA, HUD issued on July 29, 1977, a Request for Proposals ("RFP") soliciting entities prepared to participate in the NFI program under either part A or part B of the NFI Act. At the same time, negotiations between NFIA and HUD continued. Negotiations broke down again on August 16, 1977, when NFIA rejected HUD's insistence upon prior approval of NFIA's operating expenses.

Aware of the inability of HUD and NFIA to agree on an extension of the 1969 contract, the House Subcommittee on Housing and Community Development of the Committee on Banking, Finance and Urban Affairs held hearings on the negotiations on September 7 and 8, 1977. Members of the subcommittee reiterated the Congressional preference for a part A program and their desire that HUD and NFIA reach an agreement. Negotiations between the parties resumed in late September, 1977.

In the meanwhile, three bid proposals to participate in the NFI program under a part B framework had been received by HUD in response to the FRP issued July 20, 1977. The best offer was determined to be Electronic Data Systems Federal Corporation ("EDS") and further negotiations were entered into between HUD and EDS. On September 23, 1977, the last day for submission of bids in connection with the RFP, NFIA tendered to HUD a proposed agreement indicating a willingness to continue as risk-bearer under a .part A program pursuant to the terms therein.

On October 19, 1977, HUD and NFIA reached tentative accord as to a number of the problems with respect to operation of the joint venture. This "agreement to agree" was written up but was, however, never signed by the parties.

On November 2, 1977, in light of the course of the negotiations with NFIA and of the projected cost savings contained in the EDS proposal, the Secretary of HUD determined that the operation of the NFI program would be materially assisted by the Federal Government's assumption of the operational responsibility for flood insurance. This determination was submitted to Congress in the form of a report.[4] The report indicates HUD's intention to contract in a part B framework with EDS, promises no diminution in the use of insurance agents and brokers and insurance adjustment organizations in the NFI program, and contains descriptions of EDS' functions which are essentially ministerial. In mid-November, the Chairman of the Senate and House Committees responsible for HUD expressed support for the Secretary's decision.[5]

Thirty days having passed since the report to Congress, and no adverse Congressional action having been taken, the Secre-

2. In January 1977, HUD and NFIA concluded a Tentative Draft Agreement, which was published in the Federal Register, and which resolved some of the issues in dispute between HUD and NFIA.

3. At the same time, NFIA offered HUD a new agreement based upon the Tentative Agree-

ment and indicated a readiness to continue negotiations.

4. See 42 Fed.Reg. 58569.

5. See Attachment O to affidavit of J. Robert Hunter, submitted as part of Defendant's papers in opposition to Plaintiff's motion.

tary may implement the proposed conversion to a part B program at any time. EDS' part B proposal expires on December 31, 1977. NFIA filed the instant lawsuit November 29, 1977, seeking to enjoin any action by HUD in connection with the proposed takeover.

Plaintiff's Complaint frames two general issues: whether the Secretary's decision to convert to a part B program satisfies the legal requirements of the NFI Act and whether the proposed contract with EDS is permissible under the terms of the Act. This Court approaches these issues from the standpoint of considering both preliminary and final relief.

■ With respect to preliminary relief, this Court is not persuaded that NFIA has met any of the standards articulated in *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 104 U.S.App. D.C. 106, 259 F.2d 921, 925 (1958). Leaving the merits aside, the Court finds no showing of irreparable injury on these facts. The loss which plaintiff confronts is not the sort of loss recognized as necessitating interim relief. See *Virginia Jobbers,* 104 U.S.App. D.C. at 110, 259 F.2d at 925; *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Further, the Court concludes that any harm to NFIA would be more than outweighed by the injury to the interests of the Government if an injunction is granted. Potential disruption to the FNI program would be intolerable. For the same reason, the public interest mili-

tates against any delay in the implementation of the proposed part B program.

■ With respect to the merits, this Court concludes that the actions of the Secretary have been within her authority under the NFI Act and do not amount to either an abuse of discretion or an error of law. The Court is mindful that its review in the present case is limited. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). With respect to the report submitted by the Secretary to Congress per 42 U.S.C. § 4071, this Court will not evaluate the substance of that report or substitute its judgment for that of the Secretary or the Congress. See *National Association of Government Employees v. Schlesinger,* 397 F.Supp. 894 (E.D.Pa.1975), *aff'd,* 523 F.2d 1051 (3d Cir. 1975). The Court is satisfied that the contents of the report meet the requirements of § 4071(b)(1)–(4). That is enough.

■ The crux of this lawsuit is whether the Secretary's determination to convert to a part B program comports with 42 U.S.C. § 4071(a). The Court is persuaded that it does. The Court is aware of the strong Congressional preference for a part A program. However, § 4071(a) allows the Secretary to convert from part A if the Secretary determines that operation of the flood insurance program as provided for in part A "cannot be carried out, or that such operation, in itself, would be assisted materially by the Federal Government's assumption" of operational responsibility.[6] While NFIA

---

**6.** 42 U.S.C. § 4071 provides:

(a) If at any time, after consultation with representatives of the insurance industry, the Secretary determines that operation of the flood insurance program as provided for under part A cannot be carried out, or that such operation, in itself, would be assisted materially by the Federal Government's assumption, in whole or part, of the operational responsibility for flood insurance under this chapter (on a temporary or other basis) he shall promptly undertake any necessary arrangements to carry out the program of flood insurance . . . through the facilities of the Federal Government, utilizing, for purposes of providing flood insurance coverage, either—

(1) insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the United States.

(2) officers and employees of the Department of Housing and Urban Development, and such other officers and employees of any executive agency . . . as the Secretary . . . may from time to time, agree upon . . . or

(3) both . . .

(b) Upon making the determination referred to in subsection (a) of this section, and at least thirty (30) days prior to implementing the program of flood insurance . . . through the facilities of the Federal Government, the Secretary shall make a report to the Congress and such report shall—

emphasizes the first clause of § 4071(a) and points to ostensible success of the NFI program under its management, what is crucial in this case is the second clause of § 4071(a) and the "materially assist" provision. On these facts this Court cannot say that the Secretary's determination that conversion to part B would materially assist the NFI program is clearly erroneous or without a rational basis. In light of the course of the negotiations between HUD and NFIA and the disagreements between the parties, and given the necessity of an operational NFI program, the Secretary's decision does not appear arbitrary or capricious. Nor is the Court persuaded that the Secretary applied an incorrect standard in reaching her determination. That determination appears supported on the record in this action and the legislative history of the NFI Act does not compel a different conclusion.[7]

█ Finally, this Court is not convinced that the proposed contract with EDS violates the terms of either 42 U.S.C. § 4071 or § 4082. HUD proposes to utilize only government employees or insurance entities with respect to the insurance aspects of the part B program and proposes to employ EDS in a ministerial capacity. The Court is satisfied with these representations and any challenge to the functions which EDS performs appears premature.

█ In conclusion, the Court determines that the Secretary has acted within her authority under the NFI Act and that her actions have a rational basis, are not based upon an impermissible and invalid interpretation of the statute, and are not clearly erroneous. Judgment for defendant is, therefore, in order.

One other issue remains. At hearing in this matter, counsel for plaintiff made oral application to the Court for a stay pending appeal in the event the Court was disposed to rule against plaintiff's position. Counsel for HUD opposed such a stay. The Court deems it proper to rule with respect to the oral motion and for the reasons indicated herein with respect to plaintiff's showing under *Virginia Jobbers*, the Court determines that a stay is inappropriate.

(1) state the reasons for such determination,
(2) be supported by pertinent findings,
(3) indicate the extent to which it is anticipated that the insurance industry will be utilized in providing flood insurance coverage under the program, and
(4) contain such recommendations as the Secretary deems advisable.

7. Despite the Congressional preference for a part A program, there is equally strong concern expressed in the legislative history for continuity in the provision of flood insurance. It is that concern which is behind § 4071's allowance for conversion to a part B program and this Court cannot say that the actions of the Secretary are in derogation of that concern.