**Daniel F. KOLNER and Josephine G. Kolner, Plaintiffs,**

v.

**DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.**

**No. 81 C 4749.**

United States District Court, N. D. Illinois, E. D.

Sept. 29, 1982.

Lev & Sneckenberg, Chicago, Ill., for plaintiffs.

Dan K. Webb, U. S. Atty. by Edward J. Moran, Asst. U. S. Atty., Chicago, Ill., for defendant.

ORDER

BUA, District Judge.

Plaintiffs, Daniel and Josephine Kolner, brought this action for damages on a flood

insurance contract issued under the National Flood Insurance Act of 1968 (the "Act"). 42 U.S.C. 4001 *et seq.* The cause comes before the Court on defendant's motion to reconsider this Court's previous decision granting plaintiffs' request for a jury in the trial of their lawsuit. On reconsideration, this Court finds that plaintiffs are not entitled to a jury trial, and, therefore defendant's motion is granted.

■ The Seventh Amendment to the United States Constitution provides that "In suits at common-law, where the value in controversy shall exceed twenty dollars, the right to a trial by jury shall be preserved." Fed.R.Civ.P. 38 allows a party to demand a jury trial as to issues "triable of right by a jury." It is well established that the Seventh Amendment right does not apply in actions against the Federal Government. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). A plaintiff in such an action has a right to a trial by jury only where Congress has affirmatively and unambiguously granted that right by statute. *Id.*

■ Thus the issue in the instant suit crystallizes to whether this is an action against the United States, requiring a statutory entitlement to a jury trial, or an action against a private insurer where the Seventh Amendment would grant plaintiff a right to a jury trial. In order to answer this question, it is necessary to analyze the background of the current Act.

The National Flood Insurance Act established the National Flood Insurance Program (the "NFIP") to provide low-cost flood insurance to high-risk areas. Congress found that it was uneconomical for the private insurance industry alone to make flood insurance available to certain areas. It was also found that a program with large-scale participation by the Federal Government was feasible. This program was to be carried out to the maximum extent practicable by the private insurance industry. 42 U.S.C. § 4001(b). The Act outlined two alternative methods of implementing the program.

First, Part A of the Act set up an industry program with Federal financial assistance. Under Part A, the National Flood Insurance Association (the "NFIA"), an unincorporated association of 132 private insurance companies, shared the financial risk of flood insurance losses with the United States Department of Housing and Urban Development ("HUD"). NFIA issued policies in its own name and marketed and serviced them through local insurance agents. *NFIA v. Harris,* 444 F.Supp. 969, 970 (D.D.C.1977).

In 1976, NFIA and HUD began to disagree over the operation of the program. *Id.* at 970–971. In November, 1977, after prolonged negotiations with NFIA, HUD determined that the program would be materially assisted by the Federal Government's assumption of the operational responsibilities for flood insurance under Part B of the Act. The Secretary of HUD communicated her intention to switch to a Part B framework to Congress as required by 42 U.S.C. § 4071(b). 42 Fed.Reg. 58569 (1977).

Under Part B of the Act, HUD is authorized to use the facilities of the Federal Government to provide flood insurance coverage. 42 U.S.C. § 4071(a). HUD took over the program on January 1, 1978. After that date, all policies were to be considered policies issued by the Federal Insurance Administration. 44 C.F.R. § 61.15 (1982). All of HUD's responsibilities under the program were subsequently transferred to the Director of the Federal Emergency Management Agency (FEMA).

The extent of the Federal Government's present participation in the NFIP has increased since the switch to Part B. Under Part A of the Act, the NFIA was the entity which provided the risk capital, sold the insurance, and paid any claims. HUD was authorized to make payments to the pool to subsidize premium rates and to arrange for reinsurance of the pool if necessary. *See Pennsylvania v. NAFI,* 520 F.2d 11 (3rd Cir. 1975). Under Part B, however, operational responsibility for the program was transferred first to HUD and then to FEMA. The statute authorizing the Part B framework,

42 U.S.C. § 4071, authorizes the use of insurance companies as fiscal agents of the United States and the use of officers and employees of HUD. Although HUD's report to Congress indicated that private sector insurers were to be used to "the maximum extent practicable" under the Part B framework, 42 Fed.Reg. 58573 (1977), the report also indicated that the private insurers were to be used exclusively on the fiscal agent-contractor basis rather than as the pool of insurers they were previously. *Id.*

Thus under the Part A framework, the NFIA was essentially a private insurance company, and a jury trial in a suit against it was proper. A suit against NFIA was not a suit against the Federal Government. In *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), a case brought under the Part A framework, trial was before a jury. In discussing the awarding of prejudgment interest, the Court stated its belief that NFIA was not an arm of the sovereign but an association of private insurers. The Court also found that the fact that the government had a financial stake in the program did not clothe NFIA with sovereign immunity. This conclusion was reinforced by Part A's jurisdictional provision which stated that "the claimant ... may institute an action ... against such company or other insurer ..." 42 U.S.C. § 4053.

Under the present Part B framework, however, the Federal Government's participation is greatly increased. While the exact extent of the role played by private insurers under Part B is unclear, it seems that the Federal Government has assumed most of the responsibility for the operation of the program. A suit against the director of FEMA is therefore a suit against the Federal Government. In *Possessky v. NFIA,* 507 F.Supp. 913 (D.N.J.1981), the Court, in interpreting Part B's jurisdictional provision to permit exclusive federal jurisdiction stated:

> "The suit against the Director of the FEMA under Section 4072 is subject to the limited waiver of sovereign immunity. The plaintiffs are challenging the federal agency's final action denying their claim for benefits under an exclusively federal program. If the plaintiffs are successful, the judgment is paid from the public funds of the United States, which is the hallmark of the application of sovereign immunity."

*Id.* at 915. This language supports this Court's conclusion. Further support is provided by the *separate* jurisdictional provision for Part B which states, "the claimant ... may institute an action ... against the Secretary ...". 42 U.S.C. § 4072.

Thus, this Court holds that, because the case at bar is a suit against the Federal Government, the Seventh Amendment right to a trial by jury does not apply. *Lehman v. Nakshian,* 453 U.S. at 160, 101 S.Ct. at 2701. Inasmuch as Congress has not granted an entitlement to a jury trial under 42 U.S.C. § 4072 or any other provision, the plaintiffs in this case have no such right. This Court thus amends its earlier order and strikes plaintiffs' jury demand.

IT IS SO ORDERED.