Joseph SODOWSKI, Plaintiff–Appellant,

v.

NATIONAL FLOOD INSURANCE PROGRAM OF the FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant–Appellee.

No. 86–2227.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1987.

Decided Nov. 25, 1987.

Bruce Thiemann, Peoria, Ill., for plaintiff-appellant.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., Gerald D. Fines, U.S. Atty., Springfield, Ill., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and GRANT, Senior District Judge.[*]

COFFEY, Circuit Judge.

Joseph Sodowski, plaintiff-appellant, appeals from the district court's order denying recovery for the structural damages his dwelling sustained during a flood in December of 1982. Sodowski based his claim for recovery on the Standard Flood Insurance Policy (SFI Policy) issued pursuant to the National Flood Insurance Program (NFIP) administered by the Federal Emergency Management Agency (FEMA). The district court denied coverage finding that the dwelling's structural damage was caused by soil settlement and thus excluded under the SFI Policy's earth movement exclusion. We affirm.

I

The facts material to this case are undisputed. Sodowski owns a home on the west bank of the Illinois River, in Peoria County, Illinois. He purchased the dwelling in the early 1950's. During the late 1960's, Sodowski built an addition to his house (away from the river). The older portion of the house contained a master bedroom, bathroom, living room, kitchen, a basement, and a crawlspace.

In December, 1982, when the Illinois River overflowed its banks, the water inundated Sodowski's basement, crawlspace, and reached the first floor living area.[1] The house sustained substantial structural damage and current and/or wave activity collapsed a wooden wall surrounding the crawlspace and basement. At the time of the December 1982 flood, Sodowski was insured under a SFI Policy issued by the NFIP pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq.*, and administered by the FEMA.

Sodowski's SFI Policy insured his property against all "Direct Loss By 'Flood.'" The policy defines "flood:"

"Wherever in this policy the term 'flood' occurs, it shall be held to mean:

A. A general and temporary condition of partial or complete inundation of normally dry land areas from:

1. The overflow of inland or tidal waters.

2. The unusual and rapid accumulation or runoff of surface waters from any source.

3. Mudslide (i.e., mudflow), a river or flow of liquid mud proximately caused by flooding as defined in subparagraph A–2 above or by the accumulation of water under the ground.

B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the anticipated cyclical levels."

The policy also provides that: "The Insurer shall not be liable for loss: by ... earthquake, landslide or any other earth movement except such mudslide or erosion as is covered under the peril of flood."

After the flood, Sodowski filed two proof of loss claims with the NFIP claiming: (1) structural damage to the dwelling in the amount of $50,000; and (2) damage to the contents of his home in the amount of $2,066.15. FEMA paid Sodowski's claim for the damaged contents, but denied coverage for the structural damage asserting that these damages were excluded under the earth movement exclusion of the policy. Sodowski filed suit against FEMA and after a trial to the court the trial judge entered judgment in favor of Sodowski in the amount of $3,000 for the value of the wooden wall, but found that the structural damage to Sodowski's dwelling was caused

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Sodowski's dwelling also was inundated by water during floods in 1962, 1970, 1973, 1974, 1976, and 1979. The evidence established that the water level during the 1982 flood reached one of its highest levels in recent times.

by "settlement of the ground beneath the house" and was thus excluded under the terms of the SFI Policy.

Appellant raises two issues on appeal: (1) whether the SFI Policy provides coverage for structural damage to a dwelling caused by soil settlement which was itself caused by flooding, and (2) whether he is entitled to prejudgment interest on his damages.

## II

The relevant facts are undisputed; thus, the issue before us is whether the trial court properly interpreted the SFI Policy to exclude coverage for structural damages directly caused by soil settlement, itself a result of the flood. This question is one of first impression in this circuit, and we join the Fifth Circuit's holding in *West v. Harris*, 573 F.2d 873 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), that the SFI Policy does not provide coverage for damages caused by any earth movements other than those expressed exceptions set forth in the earth movement exclusion.

We note initially that the district court found that the structural damage to Sodowski's house was caused "by settlement of the ground beneath the house, caused by a change in the consistency of the soil when the flood waters surrounded the foundation during the December 1982 flood." The appellant concedes "that earth movement was the nearest or immediate cause" of his loss but asserts that because the flood waters caused the change in the soil's consistency, the flooding must be a proximate cause of the structural damage. Sodowski contends that the SFI Policy is ambiguous because under one construction of the policy language, damages resulting from soil settlement, itself caused by flooding, are not covered pursuant to the earth movement exclusion, but under another, more "reasonable construction" of the policy language, these same damages would be covered as a direct loss by flood. Sodowski argues that because the insurance policy is ambiguous, we should construe the language strictly against the insurer and lib-

erally in the insured's interest; therefore, appellant asserts that the SFI Policy covers the structural damages to his dwelling caused by earth movement, itself caused by an inundation of flood water.

▮ Federal common law controls the interpretation of insurance policies issued pursuant to the National Flood Insurance Program (NFIP). *Hanover Building Materials v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir.1984); *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 135 (1st Cir.1984); *West v. Harris*, 573 F.2d 873, 881 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979); *accord Meister Bros. Inc. v. Macy*, 674 F.2d 1174, 1175 fn. 2 (7th Cir.1982). Courts applying federal common law to flood insurance policies have recognized that "Congress did not intend to abrogate standard insurance law principles" by enacting the NFIP. *Atlas Pallet, Inc.*, 725 F.2d at 135; *Drewett v. Aetna Casualty & Surety Co.*, 539 F.2d 496 (5th Cir.1976). Because "neither the statutory nor decisional law of any particular state is applicable to the case at bar, we are [thus] free to apply the 'traditional common law technique of decision by drawing upon standard insurance principals.'" *Atlas Pallet Inc.*, 725 F.2d at 135 (quoting *West v. Harris*, 573 F.2d at 881); *see also Brazil v. Guiffrida*, 763 F.2d 1072, 1075 (9th Cir. 1985). Because the interpretation given to an insurance policy is a question of law, our review is *de novo*. *Atlas Pallet, Inc.*, 725 F.2d at 134.

Appellant directs our attention to *Aschenbrenner v. United States Fidelity & Guaranty Co.*, 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137 (1934), for the insurance principles controlling the present dispute. That Court stated:

"[W]e are interpreting a contract and are concerned only with the sense in which its words were used.... The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two con-

structions, that more favorable to the insured will be adopted, ... and unless it is obvious that the words are intended to be used in their technical connotation they will be given the meaning that common speech imports."

*Aschenbrenner,* 292 U.S. at 84–85, 54 S.Ct. at 592–93 (citations omitted). However, " 'if the language of a policy is clear and unambiguous, it should be accorded its natural meaning.' " *Hanover Building Materials, Inc. v. Guiffrida,* 748 F.2d at 1013 (quoting *Landress Auto Wrecking Co. Inc. v. United States Fidelity & Guaranty Co.,* 696 F.2d 1290, 1292 (11th Cir.1983)). Applying these principles, we initially determine whether the language found in the flood insurance policy is "reasonably open to two constructions."

■ Sodowski's flood insurance policy provides that the defendant "shall not be liable for loss: by ... earthquake, landslide *or any other earth movement except* such mudslide or erosion as is covered under the peril of flood." (Emphasis added.) In unambiguous terms, the policy excludes from coverage losses caused by any earth movement except mudslides or erosion.[2] The language in the SFI Policy does not expressly except losses caused by soil settlement resulting from flooding from the earth movement exclusion. The language is unambiguous in its recitation that only losses caused by mudslides or erosion are covered. Sodowski acknowledges that the structural damage to his dwelling was caused by ground settlement but nonetheless argues for coverage because the settlement of the soil was caused by the flood. We sympathize with the claimant, but Mr. Sodowski is in error, for a reading of the policy allows only one reasonable

construction, namely, that the policy clearly excludes damages resulting from any earth movement other than those caused by a mudslide or erosion. We agree with the district court that "[t]he settlement [of the soil or ground] which caused the damage to the house is a type of earth movement which is excluded from the coverage of the insurance policy" because it is neither a mudslide nor erosion.[3] Therefore, we hold that Sodowski is not entitled to recover for the structural damage caused by soil settlement regardless of the cause of the soil settlement itself.

Thus, we join the Fifth Circuit's holding in *West v. Harris,* 573 F.2d 873 (5th Cir. 1978) *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), and reject the decision of the Eleventh Circuit in *Quesada v. Director, Federal Emergency Management Agency,* 753 F.2d 1011 (11th Cir. 1985). In West, the court was faced with two similar factual situations, both involving houses built on concrete slabs. There, as in this case, flooding occurred in the area surrounding the two dwellings, and in one instance water also inundated the house. The soil under the insureds' structures became saturated with water and eventually the soil settled causing structural damage to the dwelling. The court stated that "[r]egardless of whether this settlement had been in process over a long period of time or whether it occurred immediately after the flood and draining of the canals, it was still the result of earth movement." *West v. Harris,* 573 F.2d at 877. The court, giving full effect to the earth movement exclusion and disallowing the plaintiffs' claims, held that "[t]he policy

**2.** During trial the plaintiff unsuccessfully attempted to prove that the structural damage was caused by erosion as defined in the SFI Policy under "direct loss by flood" but failed to convince the court, the trier of fact in this instance. The appellant has conceded that the structural damage was not a result of erosion.

**3.** "Earth movement" is defined as the "elevation or subsidence of the land," *Dictionary of Geological Terms,* Revised Edition (1976); *Webster's Third New International Dictionary,* Unabridged (1981), "land" is defined as the "ground or soil

in respect to its situation, nature, or quality," *Webster's* (1981), and "subsidence" is characterized as the act or process of subsiding or settling. *Id.* The district court's undisputed finding is that "[t]he cause of the structural damage to the Plaintiff's house was settlement of the ground beneath the house, caused by a change in the consistency of the soil when the flood waters surrounded the foundation during the December, 1982 flood." The ground settlement in this case is clearly a type of land subsidence or earth movement.

does not cover loss caused by earth movement in the form of soil settlement."[4] *Id.*

In *Quesada,* the case Sodowski relies on, the plaintiff's Florida home was constructed on a concrete slab resting on sand fill. During a tropical storm, the underground water rose to within inches of the concrete slab while at the same time saturating the sand beneath the house. After the storm the water receded, the saturated sand settled causing movement of the foundation resulting in structural damage to the house. Over a compelling dissent, the majority, rejecting the *West* rationale, held that the SFI Policy provided coverage under the circumstances because the soil compaction would not have been triggered "but for" the flooding. *Quesada,* 753 F.2d at 1014.

In so holding, the majority noted that the policy at issue in *Quesada* covered losses resulting from erosion caused by flooding, unlike the policy at issue in *West.* The court implied that the broadening of coverage by the erosion "addition" justified rejecting the holding in *West.* We are of the belief that the *Quesada* court misconstrued the impact of the erosion "addition" to the insurance policy. The amended policy at issue in *Quesada,* like the policy in effect at the time of the unfortunate 1982 flood, clearly excludes damages resulting from earth movement except those caused by mudslides and erosion. The Federal Emergency Management Agency's (FEMA) S.F. I. Policy provides additional coverage for erosion caused by flooding, nothing more, nothing less.

Furthermore, our research reveals, contrary to the dissenter's belief, that neither Congress nor the Federal Emergency Management Agency (FEMA) have even suggested, much less directed, that the SFI Policy provides coverage for losses caused by earth movement, itself caused by flooding. The National Flood Insurance Program, unlike private insurance plans, was established by Congress with the enactment of the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et. seq.* Initially, the National Flood Insurers Association (NFIA), an unincorporated association of insurance companies, managed the Program with the United States Department of Housing and Urban Development (HUD) in a "cooperative government-industry joint venture." *National Flood Insurers Ass'n v. Harris,* 444 F.Supp. 969, 970 (D.D.C. 1977). In 1976 the Secretary of HUD and the NFIA "began to suffer disagreements concerning the administration of the [Program, and in particular disagreed over] the general authority of the Secretary ... to construe the terms of the Standard Flood Insurance Policy." *Id.* at 970–71. The result of the disagreements between HUD and the NFIA was that the Secretary took control and assumed all operational responsibilities of the Program on January 1, 1978. *Id.* at 970. On March 31, 1979, the Director of the Federal Emergency Management Agency (FEMA) took over HUD's duties and responsibilities under the Program. *Possessky v. National Flood Insurer's Ass'n,* 507 F.Supp. 913, 914 (D.S. D.1981); *see also In re Estate of Lee v. National Flood Insurance Program,* 812 F.2d 253, 256 (5th Cir.1987). Under the Act, the Director of FEMA (after consultation with various advisory committees pursuant to the provisions of the Act) is to "provide by regulation for general terms and conditions of insurability ... including ... the nature and limits of loss or damage ... which may be covered by [flood] insurance, [as well as] ... the classification, limitation and rejection of any risks which

---

**4.** The dissent asserts that:

"'The heart' of *West,* according to the *Quesada* district court, was that the flood insurance policy did not cover 'damage which was "the result of earth movement," where such movement would have occurred over time *regardless* of the flooding....'"

The dissent ignores the clear holding of West that "regardless" of when the settlement occurred, as long as the soil settlement caused the

property damage, coverage is denied under the earth movement exclusion. *West v. Harris,* 573 F.2d at 877. As Judge Tjoflat observed in his dissent: "There was no finding in *West* that the damage was caused by some preexisting condition in the supporting soil; to the contrary, the finding was that the saturation of the supporting soil, followed by the lowering of the water level, caused the damage." *Quesada,* 753 F.2d at 1016.

may be advisable." 42 U.S.C. § 4013(a)(2) & (3).

■ Accordingly, the Director has defined "flood" or "flooding" under the policy to include the following four categories of occurrences:

"(a) A general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters.

(2) The unusual and rapid accumulation or runoff of surface waters from any source.

(3) Mudslides (i.e., mudflows) which are proximately caused or precipitated by accumulations of water on or under the ground.

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforseeable event which results in flooding as defined in (a)(1) of this section."

44 C.F.R. § 59.1 (1982). Appellant's SFI Policy, as noted above, contains an almost identical definition of flood. Furthermore, the regulations also provide that:

" '*Mudslide*' (i.e., mudflow) describes a condition where there is a river, flow or inundation of liquid mud down a hillslide usually as a result of a dual condition of loss of brush cover, and the subsequent accumulation of water on or under the ground preceded by a period of unusually heavy or sustained rain. A mudslide (i.e., mudflow) may occur as a distinct phenomenon while a landslide is in progress, and will be recognized as such by the Administrator only if the mudflow, and not the landslide, is the proximate cause of damage that occurs."

We note that of the four categories of occurrences enumerated in the Director's list as qualifying for insurable flood damage as earth movements, only those losses resulting from erosion or mudslide are covered. We hold that nothing in the language of the regulations referred to above, nor in the Congressional history of this Act, nor in any applicable statute even suggest that a soil settlement condition resulting from flooding was to be an exception to the clearly defined earth movement exclusions of the SFI Policy.

Nevertheless, the dissent argues that Congress intended to provide coverage where the flood or "mudflow and not the landslide is the proximate cause, or *sine qua non*, without which the damage claimed would not have occurred," (quoting S.Rep. No. 583, 93rd Cong. 1st Sess., reprinted in 1973 U.S.Code Cong. & Ad.News 3217, 3229), and thus concludes that the plaintiff-appellant's structural damages should be covered under the Standard Flood Insurance Policy.

The Flood Disaster Protection Act of 1973, *inter alia,* revised the 1968 Act so as to (1) extend coverage to losses caused by erosion as defined in the SFI Policy, S.Rep. No. 583, 93rd Cong. 1st Sess., reprinted in 1973 U.S.Code Cong. & Ad.News 3217, 3229; and (2) amend the mudslide definition of the Act "making clear that losses or damage resulting from mudflows will be paid, regardless of whether there may already have been a landslide in progress." *Id.* at 3228. In this context of amending the "mudslide definition," the Senate report states that the FIA "is expected to pay for mudflow losses that occur unexpectedly while a landslide is in progress, so long as the mudflow and not the landslide is the proximate cause, or *sine qua non,* without which the damage claimed would not have occurred." *Id.* at 3229. Even though Sodowski concedes that erosion did not cause his losses and did not even attempt to prove that his losses were caused by a mudslide (i.e., mudflow), the dissent, for some reason, attempts to rely on the Senate report discussing the new mudslide definition in an attempt to require FEMA to pay for Sodowski's losses because the flood or "mudflow and not the landslide [was] the proximate cause, or *sine qua*

*non,*" of Sodowski's losses. Regrettably, the dissent misapplies Congress' definition of a mudslide and confuses the use of the proximate cause analysis.

██ In this case, had the insured submitted evidence that the losses were in fact caused by a mudslide, it might be appropriate to use a proximate cause analysis to determine whether the particular damages were caused by a mudslide. But in the case before us, the insured failed to submit such evidence. In the absence of evidence of a mudslide, the dissent's attempt to utilize a proximate cause analysis to provide coverage is simply an "end run around" the clear and unambiguous intent and terms of the SFI Policy which excludes coverage for losses caused by any earth movement other than erosion or mudslide. Until Congress or the Federal Emergency Management Agency expressly provides coverage for losses caused by earth movement (soil settlement), itself the result of flooding, we refuse to direct the payment of damages for such alleged losses because "[c]ourts have a duty to carefully observe the express conditions defined by Congress before allowing such awards." *In re Estate of Lee*, 812 F.2d at 256.

Unfortunately, the dissent would join the *Quesada* majority which expanded the terms of the SFI Policy through an act of judicial activism. We refuse to accept this broad and expansive interpretation of the policy and join the Fifth Circuit in holding that the S.F.I. Policy language is clear and unambiguous and excludes all losses caused by any earth movement except those changes in the topography caused by mudslides and erosion.

██ The Standard Flood Insurance Policy recites in clear and unambiguous terms that the insurer will only be liable for damages caused by two types of earth movements: erosion and mudslides. All losses resulting from any other earth movement are not covered under the SFI Policy. The undisputed facts establish that Sodowski's losses were neither caused by erosion nor mudslide; rather, the structural damage to Sodowski's home was caused by the settlement of the ground beneath his house, a type of earth movement quite distinct from erosion or mudslides. Until Congress authorizes coverage for losses caused by ground settlement, as it has established for losses resulting from mudslides or erosion, we will not interpret the SFI Policy to the contrary. Thus, we hold that structural damages similar to Sodowski's caused by any earth movement, other than mudslides or erosion, are not covered under the clear and unambiguous terms of the SFI Policy.

### III

Sodowski's complaint demanded prejudgment interest on the amount awarded as damages for his losses caused by flooding. Subsequently, Sodowski was awarded $3,000 for the collapse of the wooden wall resulting from the flood. The $3,000 damages had been stipulated to by the parties after the trial and before judgment had been entered. Sodowski concedes that he has waived his claim for prejudgment interest on the $3,000 as a result of the stipulation. Because we hold that he is not entitled to relief on his claim for his structural damages, we need not consider his claim for prejudgment interest on the structural damages.

We affirm.

GRANT, Senior District Judge, dissenting:

I respectfully disagree with the majority's conclusion that there can be only one reasonable construction of the language of the flood insurance policy at issue.

The evidence showed that this flood of December 1982 was one of the highest in recent times, that the water level remained high for an extended period of time, and that there was current and wave activity against the house. The water inundated the basement and rose into the living area, damaging personal property. The current or waves knocked down a wooden wall. After the water subsided, the walls of the house cracked and separated from the floor; the doors and windows became unaligned, the floors uneven, the roofline crooked. Yet the insurers assumed liability for only the damage to the contents of the house and the wooden wall. They contended that the structural damage was

caused, not by the flood, but by settlement of the structure's footing.

The majority states that it agrees with the district court that the "settlement which caused the damage to the house is a type of earth movement which is excluded from the coverage of the insurance policy" because it is not a mudslide or erosion. It is this narrow reading of the "earth movement" exception with which I disagree.

The "earth movement" exclusion of the policy states that the policy will not cover peril "by theft or by fire, windstorm, explosion, earthquake, landslide or any other earth movement except such mudslide or erosion as is covered under the peril of flood." The term "soil settlement" is not used either in the insurance policy itself or in the federal flood insurance legislation. The question is: If "settlement" is a type of earth movement, as the district court and majority hold, is it more like those perils that are excluded under the policy, or more like "such mudslide or erosion as is covered under the peril of flood"? Keeping in mind that "any ambiguities in an insurance policy should be resolved against the insurance company," *Myers v. Merrimack Mutual Fire Ins. Co.*, 788 F.2d 468, 470 (7th Cir.1986), we turn for guidance to Congressional explanations of its intent in defining "flood," "erosion," and "mudslide."

The legislative history of the Flood Disaster Protection Act of 1973, P.L. 93–234, which revised the 1968 Act by expanding the national flood insurance program, elucidates in "Definition of 'Flood'" and "Extension of Flood Insurance Program to Cover Losses from Erosion" the extent of coverage provided for damage by flood, mudslide, or erosion. S.Rep. No. 583, 93rd Cong. 1st Sess., reprinted in 1973 U.S.Code Cong. & Ad.News 3217, 3228–29. It makes clear that Congress did not intend to provide coverage for damage due to gradual earth movement, the shifting of unsubstantial fill under buildings, or the normal, continuous and gradual wearing away of land by waves. However, it did intend that the effects of unforeseeable and sudden floods, mudflows and abnormal erosion situations be covered. Furthermore, where the mudslide or flood is "preceded or accompanied by a slow or gradual movement of the earth, sometimes caused or aggravated by the improper use of fill in the construction of new subdivisions, which had already endangered the insured property, and would ultimately result in its destruction," the FIA would be required to pay for those losses if the mudflow or flood *proximately* caused the damage. Congress explained the amendment clearly:

> The amendment added by the committee is intended to make clear that, just as FIA would be required to pay a sudden flood loss that occurred to an insured property while a gradual landslide was in progress, so too it is expected to pay for mudflow losses that occur unexpectedly while a landslide is in progress, so long as the mudflow and not the landslide is the proximate cause, or *sine qua non*, without which the damage claimed would not have occurred.

*Id.* at 3229. The evidence in this case clearly showed that the structural damage to appellant's home would not have occurred without the flood.

After considering the legislative history of the definition of "flood," I can only conclude that there is not just one reasonable construction of the instant insurance policy. The policy excludes "any other earth movement except *such* mudslide or erosion *as is covered* under the peril of flood." Congress intended coverage for the *effects* of unforeseeable and sudden floods, mudflows, and erosions, including gradual earth movements that preceded or accompanied those occurrences, as long as the peril was the proximate cause "without which the damage claimed would not have occurred." In Mr. Sodowski's circumstances, the flood was the *sine qua non* of his total losses; damage to the structure of his home cannot be separated from the immediate damage that occurred from the flood waters. I am convinced that the insurance policy can be construed reasonably and correctly to cover Mr. Sodowski's losses.

I further dissent from the majority's decision to join the holding in *West v. Harris*, 573 F.2d 873 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979) rather than *Quesada v. Director, Federal Emergency Management Agency,*

753 F.2d 1011 (11th Cir.1985). The circumstances of the case before us are more similar to those in *Quesada,* which involved damage to a house built on a sand base. The ground was saturated during a storm; after the storm, as the water receded, the saturated sand compacted and settled. The foundation, no longer supported, sank down to the lowered level, and as a result the floors and walls of the house cracked.

In *West,* the holding with which this court aligns itself, the two damaged houses were built on unstable ground, swampland. Furthermore, the city's rapid draining of the canals next to appellants' homes exacerbated the damage to the structures. No such intervening cause was found in the facts of *Quesada.* The district court opinion, *Quesada v. Director, Federal Emergency Mgmt. Agency,* 577 F.Supp. 695 (S.D.Fla.1983) fully distinguished the "materially different set of circumstances" found in *West* from the situation of the Quesadas.

In the case at bar, unlike those of the Wests and the Daigles, the Plaintiffs' home was built not on reclaimed swampland, but over sand—the customary fill used in housing foundations in Dade County. There was no evidence adduced that sand expands and contracts the way the reclaimed swampland, filled in with a mixture of humus and clay, did in the *West* cases. Similarly, no evidence was introduced in support of the notion that sand would cause the kind of "heaving and settling" with moisture changes that occurred in *West.* The Quesadas had never found it necessary to purchase fill for the types of "potholes" found on the land of the Daigles and Wests. Additionally, there was no immediate drainage, and no immediate drying of the land surrounding the Quesadas' residence, as occurred when the drainage canals in *West* were quickly emptied. Finally, although the water never entered the Quesadas' house directly, there was evidence adduced at trial that water had come all the way up to the house and under it into its foundation.

577 F.Supp. at 700.

"The heart" of *West,* according to the *Quesada* district court, was that the flood insurance policy did not cover "damage which was 'the result of earth movement,' where such movement would have occurred over time *regardless* of the flooding, or where the movement was in some sense uniquely attributable to the particular structure of the insured's house as compared with others in the locality." *Id.* at 701. On the evidence in *Quesada,* the court found that "it would be unreasonable ... to find that anything other than the flood caused the damage to plaintiffs' house." *Id.* Therefore, the district court refused to be bound by the Fifth Circuit decision with its "materially distinguishable circumstances" that made it inapposite in *Quesada* and that, in our opinion, distinguish it from the case before us. In accord, the Eleventh Circuit reasonably concluded that the compacting of the soil under the foundation of the house "would not have occurred but for the flooding and did in fact occur simultaneously therewith." 753 F.2d at 1014. That conclusion is appropriate in this case.

Therefore, I would reverse the decision of the district court and remand it for a determination of the damages, including prejudgment interest at the rate allowed under Illinois law.