**CHESAPEAKE SHIP PROPELLER CO.,**
t/a Chesapeake Ship Propeller Co.,
Inc., Plaintiff,

v.

**Wallace A. STICKNEY, Director, Federal Emergency Management Agency,**
Defendant.

No. 2:92cv514.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 18, 1993.

---

Gregory S. Larsen, Roy, Forehand, Laine & Larsen, P.C., Chesapeake, VA, for plaintiff.

Michael A. Rhine, Asst. U.S. Atty., Norfolk, VA, MaryEllen O'Neill, Atty. Advisor, Office of Gen. Counsel, Federal Emergency Management Agency, Washington, DC, for defendant.

## ORDER

PRINCE, United States Magistrate Judge.

### Statement of Facts

Plaintiff, Chesapeake Ship Propeller Company, owns property located at 4018 Bainbridge Boulevard in Chesapeake, Virginia. Plaintiff procured flood insurance through the defendant, Federal Emergency Management Agency ("FEMA") and the National Flood Insurance Program ("NFIP") by way of a Standard Flood Insurance Policy ("SFIP"). Plaintiff contends that in December 1991 and January 1992, floodwaters from heavy northeastern storms spilled over into the insured property, saturated the foundation soils and then washed them away. This allegedly resulted in settlement of the foundation and damage to the property. Plaintiff notified FEMA agents of its claim for damages on February 10, 1992, and this claim

was denied on May 20, 1992. Defendant contends that the damage to plaintiff's property was not caused by flood, but by continuing erosion, and that such erosion-related damages are not covered by the SFIP.

### Procedural History

This matter came on for trial on April 5, 1993. The parties consented to have a Magistrate Judge conduct all proceedings in the case, including the trial, and order the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. After the Court's initial ruling from the bench in favor of defendant, plaintiff requested leave to present authority to show that a drainage ditch adjacent to plaintiff's property is a body of water as contemplated by legislation under which the Standard Flood Insurance Policy was drafted. The Court deferred entry of final judgment in order to give plaintiff an opportunity to present "some cases that hold that within the contemplation of this statute and these insurance policies that that ditch through which flows some tidal water is a body of water...." Excerpts of Proceedings Transcript ("Excerpts Tr.") at 6–7.

On April 15, 1993 plaintiff filed a Memorandum in Support of Plaintiff's Complaint and Argument. Defendant filed a response on April 22, and Plaintiff filed a rebuttal to defendant's response on April 29. A review of plaintiff's submissions leads to the conclusion that plaintiff has not met the burden imposed by the Court, and judgment must be entered in favor of defendant.

### Discussion

 This case is based on a Standard Flood Insurance Policy ("SFIP") issued pursuant to congressional directives, and regulated and adopted pursuant to congressional action. See 42 U.S.C. §§ 4001–4127 (1977). Accordingly, the meaning and effect of the SFIP depends on the meaning and effect of the legislation, especially the statute authorizing and directing the regulations and defining the policy coverage. However, federal common law controls the interpretation of insurance policies issued pursuant to the NFIP. Hanover Building Materials, Inc. v.

Guiffrida, 748 F.2d 1011, 1013 (5th Cir.1984); Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 135 (1st Cir.1984); West v. Harris, 573 F.2d 873, 881 (5th Cir.1978), cert. denied, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). Furthermore, courts applying federal common law to flood insurance policies have recognized that "Congress did not intend to abrogate standard insurance law principles" by enacting the NFIP. Atlas Pallet, Inc., 725 F.2d at 135; Drewett v. Aetna Casualty & Surety Co., 539 F.2d 496 (5th Cir.1976).

The policy issued to plaintiff was the result of a federally subsidized program, which was designed to provide flood insurance at an affordable price. The program was established by the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4127, which is now administered by the Federal Emergency Management Agency ("FEMA"). As the court noted in Quesada v. Director, Federal Emergency Management Agency, 753 F.2d 1011 (11th Cir.1985), "Congress took this action because private insurance companies were unable to write flood insurance policies on an economically feasible basis and something had to be done to alleviate some of the extreme hardships suffered by flood victims." Id. at 1014. The expressed congressional intent of this program demonstrates that the program was designed to meet this need. The National Flood Insurance Act states:

§ 4001. Congressional findings and declaration of purpose

Necessity and reasons for flood insurance program

(a) The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; ...; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventative and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on

reasonable terms and conditions to persons who have need for such protection.

(g) The Congress also finds that (1) the damage and loss which may result from the erosion and undermining of shorelines by waves or currents in lakes and other bodies of water exceeding anticipated cyclical levels is related in cause and similar in effect to that which results directly from storms, deluges, overflowing waters, and other forms of flooding, ... It is therefore the further purpose of this chapter to make available ... protection against damage and loss resulting from the erosion and undermining of shorelines by waves or currents in lakes and other bodies of water exceeding anticipated cyclical levels.

42 U.S.C. § 4001(a) (1977).

■ The SFIP was drafted to reflect the dictates of this federal legislation. The SFIP is a single-risk insurance policy; it only provides coverage for "direct physical loss by or from flood." SFIP preamble. The Director of FEMA has defined "flood" or "flooding" under the policy to include the following four categories of occurrences:

(a) A general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters.

(2) The unusual and rapid accumulation or runoff of surface waters from any source.

(3) Mudslides (i.e., mudflows) which are proximately caused or precipitated by accumulations of water on or under the ground.

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding as defined in (a)(1) of this section.

44 C.F.R. Chapter 1, Subchapter B, Insurance and Hazard Mitigation, Part 59, § 59.1 (1992). The plaintiff's SFIP contains an almost identical definition of flood. However, the policy also contains the following language under "PERILS EXCLUDED: The Insurer shall not be liable for loss: ... [by] land sinkage, land subsidence, landslide, gradual erosion, or any other earth movement except such mudslides ... or erosion as is covered under the peril of flood." Complaint, Ex. A. Of course, this exclusion will be "strictly construed against the insurer and in favor of coverage." *Smith v. Horace Mann Ins. Co.*, 713 F.2d 674, 676 (11th Cir. 1983).

When Congress amended the flood insurance laws to add the mudslide/erosion provision, it noted that this amendment to the National Flood Insurance Act of 1968 added a new meaning to the term "flood." S.Rep. No. 583, 93d Cong. (1973), U.S.Code Cong. & Admin.News 1973, pp. 3217, 3229. Congress further noted that

such erosion and coverage is appropriate only to the extent that it is flood related; that is, sufficiently caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge or by some similarly unusual and unforeseeable event. The amendment is not intended to provide coverage for the losses incurred when properties built too close to shorelines are eventually damaged as a result of normal and continuous wearing away of land by ordinary wave action. If the loss is gradual and takes place over the course of years, it would not be covered.

*Id.*

"Flood related erosion" is defined as "the collapse or subsidence of land along the shore of a lake or other body of water as a result of undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water accompanied by a severe storm or by an unanticipated force of nature, such as a flash flood or an abnormal tidal surge or by some similarly unusual and unforeseeable event

which results in the flooding." 44 C.F.R. § 59.1. "Flood-related erosion area" or "flood-related erosion prone area" is similarly defined as "a land area adjoining the shore of a lake or other body of water which due to the composition of the shoreline or bank and high water levels or wind-driven currents is likely to suffer flood-related erosion damage." *Id.*

■ Accordingly, in order to establish coverage for flood-related erosion under the SFIP, the insured has the burden of proof to show that the collapse or subsidence of land along the shore of a natural body of water was the result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels at the time of the alleged damage.

■ What is meant by "erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels" has not been expressly defined in the statute or in the regulations. However, it seems clear from the legislative history and statutory language noted above that Congress did not intend to cover earth movements with flood insurance but only abnormal *shoreline* erosion and undermining caused by floods. *See Wagner v. Director, Federal Emergency Mgmt. Agency*, 847 F.2d 515 (9th Cir.1988); *Sodowski v. National Flood Ins. Program*, 834 F.2d 653 (7th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); *West v. Harris*, 573 F.2d 873 (1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979).

In *Wagner, supra*, the plaintiffs sought to recover under their SFIP for damages wrought by a rainfall-induced landslide. Plaintiffs conceded that flood waters did not damage their properties directly, but alleged that all of their damages were proximately caused by the shifting of rainwater-saturated earth beneath their property, thus the landslide exclusion of the SFIP should not apply. 847 F.2d at 522. The Ninth Circuit Court of Appeals disagreed, and in holding for FEMA stated: "As the courts have all but universally held, federal flood insurance policies do not cover losses stemming from water-caused earth movements." *Id.* (citing *Sodowski*, 834

F.2d 653, 657–59; *West v. Harris*, 573 F.2d 873, 877).

In *Sodowski, supra*, FEMA paid a claim for the damaged contents of a home inundated by a flood from the Illinois River but refused to pay for structural damage "caused by 'settlement of the ground beneath the house.'" 834 F.2d at 654–55. The issue before the appeals court was whether the trial court properly interpreted the SFIP to exclude coverage for structural damages directly caused by soil settlement, itself a result of the flood. In affirming the district court, the Seventh Circuit Court of Appeals wrote:

> In unambiguous terms, the policy excludes from coverage losses caused by any earth movement except mudslides or erosion. The language in the SFI Policy does not expressly except losses caused by soil settlement resulting from flooding from the earth movement exclusion. The language is unambiguous in its recitation that only losses caused by mudslides or erosion are covered. Sodowski acknowledges that the structural damage to his dwelling was caused by ground settlement but nonetheless argues for coverage because the settlement of the soil was caused by the flood.... [T]he policy clearly excludes damages resulting from any earth movement other than those caused by a mudslide or erosion. We agree with the district court that "[the settlement [of the soil or ground] which caused the damage to the house is a type of earth movement which is excluded from the coverage of the insurance policy" because it is neither a mudslide nor erosion. Therefore, we hold that Sodowski is not entitled to recover for the structural damage caused by soil settlement regardless of the cause of the soil settlement itself.

*Id.* at 656. In so holding the Court further noted: "The cause of the structural damage to the Plaintiff's house was settlement of the ground beneath the house, caused by a change in the consistency of the soil where the flood waters surrounded the foundation during the December, 1982 flood. The ground settlement in this case is clearly a type of land subsidence or earth movement."

*Id.* at n. 3. There is no clearer example of a case factually analogous to the case at hand.

At trial plaintiff suggested that the one exception in the case law on this issue, *Quesada v. Director, FEMA,* 753 F.2d 1011 (11th Cir.1985), should apply. In *Quesada,* the Eleventh Circuit Court of Appeals held that the SFIP covered property damage caused by the settlement and compaction of sand fill under plaintiff's home where the settlement resulted from saturation of the fill by water from a tropical storm. The court concluded that, although an earth movement may have been the immediate cause, the flood was still a proximate cause and granted relief. *Id.* at 1014. This Court does not find *Quesada,* which has been negatively treated by several federal courts,[1] compelling. As Judge Tjoflat stated in his dissent, the Court of Appeals apparently "expanded the policy's coverage by eliminating the policy exclusion." *Id.* at 1014. He further cautioned that "the majority's interpretation of FEMA's standard policy affords much wider coverage than is contemplated by the National Flood Insurance Program FEMA administers and could result in premiums beyond the pocketbooks of many of our citizens the program was designed to reach." *Id.* Accordingly, this Court joins the Seventh and Ninth Circuit Courts of Appeal in rejecting *Quesada.*

■ Given the foregoing, and as the plaintiff evidently discovered at trial, the only way the relief sought can be awarded is if it is established by a preponderance of evidence that the subject property is on the shore of a body of water, and the damage was a result of erosion caused by flooding. As previously stated, the Court granted plaintiff leave to present cases establishing that the ditch adjacent to plaintiff's property was representative of a body of water. No such caselaw has been submitted, and no evidence to that effect was presented at trial,[2] therefore, this Court will not find that plaintiff's property is on the shore of a body of water.

■ Nonetheless, even if the Court had determined that plaintiff's property is on the shore of a body of water, the land movement exception for erosion or undermining caused by waves or currents of water exceeding cyclical levels would still not apply. Evidence presented at trial demonstrated that flood waters from two northeastern storms surrounded plaintiff's property in December 1991 and January 1992, saturated the foundation soils and then washed them away. Plaintiff's expert witness, John B. Walsh, testified that this resulted in undermining and settlement of the foundation and, consequently, damage to the property. Excerpt of Testimony of John B. Walsh ("Walsh Tr.") at 3–4. In regards to a drain pipe located in the ditch adjacent to plaintiff's property, Mr. Walsh further testified:

THE COURT: This problem is strictly the flooding that occurred under these weather conditions when the water came into the ditch and then overflowed the ditch?

THE WITNESS: Yes, sir. The pipe I was referring to is ... underwater.

. . . . .

THE COURT: What is the purpose of that pipe that you say is underwater?

THE WITNESS: This pipe is an outfall for the drainage system in Portlock, a large part of it, several square blocks.

THE COURT: That pipe, then, is not designed to carry the flow of water into the ditch, the flow of tidewater into the ditch?

THE WITNESS: Well, ... I believe the tide and the storm water are two separate; so that the tide is kind of incidental. It backs—comes and goes in the ditch. It's the volume of storm water that caused the problem.

---

**1.** *See Wagner v. Director, Federal Emergency Mgmt. Agency,* 847 F.2d 515 (9th Cir.1988); *Sodowski v. National Flood Ins. Program,* 834 F.2d 653, 659 (7th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988) (rejecting *Quesada's* expansion of the SFIP's coverage as "an act of judicial activism"); *Moyer v.*

*Federal Emergency Mgmt. Agency,* 721 F.Supp. 235 (D.Ariz.1989).

**2.** Exhibits B, C and D, submitted with plaintiff's post-trial memorandum were not identified as exhibits in the Final Pre–Trial Order, therefore, defendant's objection thereto is SUSTAINED.

THE COURT: Then this pipe is for storm water?

THE WITNESS: Yes, sir.

THE COURT: From the Portlock area?

THE WITNESS: Right.

THE COURT: Now, did ... Mr. Martin say something about: The pipe was blocking up or was stopped up, and I got the impression that the stoppage of a pipe was part of this problem. Is that your understanding?

THE WITNESS: Yes, I agree with that. I didn't mean to say that wasn't part of the problem. That's a major part of the problem.

THE COURT: And it was the pipe in the drain?

THE WITNESS: Correct. It's just out of these photographs, where the material from the adjacent parking lot washed off and blocked the ditch up.

Walsh Tr. at 6–8. This passage clearly shows that the tidal water flowing into the drainage ditch adjacent to plaintiff's property was not the cause of the flooding on plaintiff's property. Instead, it was the stormwater running through the area's drainage system into the blocked ditch that caused the overflow onto plaintiff's property. Consequently, the evidence at trial did not show that plaintiff's damages were caused by "[t]he collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which results in flooding as defined in [the SFIP]," Complaint Ex. A, therefore, the erosion exception for overcoming the land movement exclusion in the SFIP would not apply.

■ In conclusion, the evidence presented through plaintiff's expert, John Walsh, is that the damage to the property was caused when the building settled after the flood water washed away the underlying ground. A combination of backed up tidal water in Milldam Creek and the ditch near the property following several days of a northeast storm and heavy rains prevented storm water in the Portlock area from draining out of the ditch into the Creek. After the tide and high water receded, the built up volume of storm water had only one place to go, as Mr. Walsh testified, and that was down the ditch and around plaintiff's building. The velocity of that water then receding from the building caused scouring, or erosion of the underlying ground, which in turn caused the settlement of the building and the resulting damage. Damage caused by that mechanism is not a covered risk of the policy. Furthermore, inasmuch as the plaintiff did not prove by a preponderance of the evidence that the damage to the subject property was the result of erosion or undermining of the shore of a natural body of water caused by waves or currents exceeding anticipated cyclical levels, the Court FINDS that plaintiff has failed to prove it is entitled to recover on that ground.

The Clerk is directed to enter judgment for defendant.