**Lee J. and Joan R. THEVENOT**

v.

**NATIONAL FLOOD INSURANCE PROGRAM.**

Civ. A. 84–0253.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Oct. 10, 1985.

Peter J. Lemoine, Boatner & Luke, Bunkie, La., for plaintiffs.

Joseph S. Cage, Jr., U.S. Atty., David A. Titman, Asst. U.S. Atty., Shreveport, La., for defendant.

OPINION

LITTLE, District Judge.

Mr. & Mrs. Lee J. Thevenot, hereinafter referred to as "Thevenot", filed this suit to

recover on a flood insurance policy issued pursuant to the National Flood Insurance Program for flood damage sustained in May of 1983. The defendant is the flood insurer for Thevenot. Thevenot also claims penalties and attorney's fees for the arbitrary and capricious denial of the claim. The defendant denies any indebtedness and has filed a counterclaim alleging that Thevenot has filed a false claim, 31 U.S.C. § 3729, and that legal penalties should apply.

This matter was tried before the Court without a jury on 26 and 27 September 1985. Having considered the pleadings, the evidence adduced at trial, the memoranda submitted by counsel and the law, the Court now renders its decision.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Thevenot purchased a mobile home on 4 November 1974 for $9,000 from Cenla Bank in Marksville, Louisiana. Cenla Bank was the creditor of a mobile home manufacturer. Cenla foreclosed, acquired whatever title its debtor had to certain assets and then sold the assets. The construction of the mobile home had not been completely finished at the time of the Thevenot sale. A few features were added by Thevenot, including furnishings, prior to transporting the mobile home to an area near Grand Lake in Avoyelles Parish. There is testimony that the act of quitclaim deed from Cenla to Thevenot is in error in that the property sold for $9,000 included not only the mobile home but also a forklift and perhaps some hand tools. The purchase price of the mobile home is not material to the decision in this matter.

A flood occurred in May of 1983 damaging the mobile home and contents. Neither Thevenot nor the mobile home were strangers to the consequence of rising water. The mobile home and contents were damaged by floods in 1975, 1979 and January of 1983 as well as the flood of May of 1983, which is the subject matter of this lawsuit. Thevenot received $18,300 for flood loss to the mobile home and contents in 1975, $16,-621 for loss in 1979 and $2,544.50 for loss in January of 1983. For the May of 1983 flood Thevenot's petition in this matter claims $27,612 in damages. History supports the conclusion that Thevenot was an experienced flood loss claimant.

Under the basic terms of the policy issued by the defendant, Thevenot is entitled to recover the replacement cost for damages sustained in the May 1983 inundation. The evidence is clear and convincing that Thevenot did not repair and refurbish the mobile home after the floods of 1975, 1979 or January of 1983. The little repair work performed after each flood was minor in nature and not of such magnitude contemplated by the amount of each previous flood damage payment. The Court is impressed and convinced by the testimony of the expert, Jim Hill. Mr. Hill has many years of experience in mobile home flood damage inspection, repair, purchase and resale. He is also experienced in estimating contents damage and replacement cost. The Court, after observing the demeanor of the plaintiffs' witnesses and their testimony, is clearly convinced that the testimony of repair as described by Mr. Thevenot and his witnesses is inaccurate, untrue and incredible. The Court believes that Mr. Hill's appraisal of the fair market value of the mobile home immediately prior to the May flood to be accurate, i.e., $500. The only other witness who had an opinion of value was Mr. Kenneth Gremillion who was a guest in the mobile home sometime before the 1983 floods. He has some experience in the business, but mobile home sales, service and appraisal are not his major concern. He opined that the value would be $7,000, less $2,000 if the insulation was wanting. There is no doubt that the insulation was nonexistent or impotent in May of 1983. The cost of removal was not considered by Mr. Gremillion. Mr. Hill's inspection included a head-to-toe analysis and it is his opinion which the Court values and adopts.

The conclusion as to the value of the contents in May of 1983 is somewhat more difficult. The list prepared by Thevenot

includes items which were not damaged in the flood (table, chairs, TV, pots, etc.). Some items such as food, hunting and fishing equipment are listed but no testimony was given as to the actual description of the items let alone any evidence as to their value at the time of the loss. The stove had been stolen and there is no evidence as to when it was stolen, i.e., before or after the flood. From what he saw during his inspections, expert Hill appraised the damaged material at $500. Thevenot's witness estimates that used furniture would cost $1,500 and that would replace what he understands the Thevenots to have lost. The proof submitted by the plaintiffs to the value of the contents of the mobile home is lacking and without content or credence. The Court adopts the conclusion of expert Hill that the actual value of the contents of the mobile home immediately prior to the May flood was $500.

█ Under the terms of the policy, the deductible was $500 for building loss and $500 for content loss. The evidence preponderates that the value of the mobile home was $500 and the value of the contents was $500 immediately prior to the May 1983 flood. Accordingly, Thevenot is not entitled to any recovery under the policy.

Even if this Court had found Mr. & Mrs. Thevenot entitled to more than the policy deductible amounts, which it does not, this Court would invoke the following policy provision and deny any recovery whatsoever.

"Article VIII—General Conditions and Provisions.

B. Concealment, Fraud: We will not cover you under this policy if you have sworn falsely, or willfully concealed or misrepresented any material fact or done any fraudulent acts concerning this insurance (See 'F', below).

F. Voidance, Reduction or Reformation of the Coverage By Us:
Voidance: This policy shall be void and of no legal force and effect in the event that any one of the following conditions occurs:

d. In the event you or your agent have (i) sworn falsely or (ii) fraudulently or willfully concealed or misrepresented any material fact (including facts relevant to the rating of this policy) in the application for coverage, or upon any renewal of coverage, *or in connection with the submission of any claim brought under the policy,* in which case this entire policy shall be void as of the date the wrongful act was committed..." (Emphasis added.)

This Court is convinced that the actions of Mr. Thevenot, as described below, clearly reveal an intention to defraud the insurer.

█ The defendant claims that Lee J. Thevenot's [1] May 1983 claim constitutes a "false claim" within the meaning of 31 U.S.C. § 3729.[2] The False Claim Act provides:

1. At trial, the defendant dropped Mrs. Thevenot from exposure to the penalty provisions of 31 U.S.C. § 3729.

2. At the end of trial, the defendant moved, pursuant to Fed.R.Civ.P. 15(b), to amend the pleadings to conform to the evidence. Specifically, the defendant requested that the scope of the False Claims Act counterclaim be expanded to cover Thevenot's insurance claims for 1979 and January of 1983. Rule 15(b) requires that:
"[W]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment..."
The issue is whether the parties expressly or impliedly tried the false claims issue as it relates to the 1979 and January 1983 claims. There was no express consent by the parties to try these issues. The Court also finds no implied consent. Generally, implied consent can be found when a party does not object to evidence relating to issues beyond the pleadings. *Haught v. Maceluch,* 681 F.2d 291 (5th Cir.1982). However, "the introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue". *Haught, Id.* at 305, *quoting, International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888 (5th Cir.1977). The evidence intro-

"A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person—

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved..."

The penal nature of this statute requires the court to scrutinize carefully the evidence to determine if the alleged misconduct violated the statute. *United States v. Equifax, Inc.*, 557 F.2d 456 (5th Cir.1977).

The requisite intent needed to establish a violation of the False Claims Act is well established in the Fifth Circuit. "To establish a violation of the False Claims Act, the United States must demonstrate, by a preponderance of the evidence, that the defendant possessed guilty knowledge or guilty intent to cheat the government." *United States v. Thomas*, 709 F.2d 968 (5th Cir.1983); *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.1975); *United States v. Aerodex, Inc.*, 469 F.2d 1003 (5th Cir.1972). (For discussion of the conflict of authority among the federal circuits as to whether specific intent to defraud is required, see Annot., 26 A.L.R.Fed. 307 (1976)).

■ The Court has no problem applying the Act to claims under the National Flood Insurance Program. Thevenot's actions to secure payment from the National Flood Insurance Program would clearly be considered a "claim" within the meaning of the

Act. "A claim is within the purview of the False Claims Act if it is grounded in fraud which might result in financial loss to the Government." *Peterson*, 508 F.2d at 52. "This remedial statute reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White Company*, 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968). (For discussion as to what constitutes a "claim" within the meaning of the False Claims Act, see, Annot. 19 L.Ed.2d 1558.)

■ One must determine if the defendant, by a preponderance of the evidence, proved that Mr. Thevenot possessed guilty knowledge or guilty intent to cheat the Government. This Court believes that the defendant has proved its assertion of false claim filing by plaintiff Lee J. Thevenot. The clear and convincing evidence which leads to that conclusion includes the following. The age of the mobile home was a most important factor in adjusting the loss. In May of 1983 a 9-year old mobile home will have a value different than that of a 5-year old mobile home. A mobile home exposed to the ravages of the 1975 and 1979 floods will have a value different than that of a mobile home not so exposed. In July of 1983 Mr. Hill inquired of Mr. Thevenot as to the age of the mobile home. Mr. Thevenot replied that it was three or four years old. Not having a title registered with the State of Louisiana to the mobile home, Mr. Thevenot was advised to acquire from his vendor (Cenla Bank) a statement reflecting the sale price and date of sale. Mr. Thevenot obtained a letter from Cenla Bank which stated that the transaction of sale occurred in 1979 and that the sale price was $9,000. Mr. Thevenot gave the letter to Mr. Hill.

---

duced relating to the 1979 and January 1983 claims was relevant to Thevenot's suit to recover under the policy and defendant's False Claims Act counterclaim relating to the May 1983 flood. The Government gave no clear indication when it introduced the evidence that it planned to use the evidence to support claims beyond the scope of the pleadings.

The Court also finds that the plaintiff would be prejudiced by allowing the pleadings to be amended. "The possibility of prejudice to the opposing party may of course be reason to find a lack of consent to amendment under Rule 15(b)." *Haught*, 681 F.2d at 306, *quoting, Wallin v. Fuller*, 476 F.2d 1204 (5th Cir.1973).

The sale actually occurred in 1974. Mr. Thevenot said he did not recall the exact date, that he had purchased two other trailers and he was merely in error. The evidence from Mr. Thevenot is unblemished in other respects. He said he lost a trailer due to flood in 1973 or early 1974 and the trailer purchased from Cenla replaced the flooded mobile home. He and his family used the trailer from 1974 to 1983 on a weekly basis, it was the only trailer which he had at Grand Lake. He claims to have repaired the trailer after two floods, one in 1975 and one in 1979. Many witnesses called by plaintiff Thevenot recall the social and hunting events conducted frequently at the Thevenot mobile home. Mr. Thevenot had three previous flood loss claims for the trailer at Grand Lake, one of which was in 1975 and the other in 1979. For Mr. Thevenot to assert that in 1983 he was confused or merely mistaken as to the year of acquisition of the trailer and the age of the trailer is unbelievable. The evidence shows that Mr. Thevenot is a businessman, farmer and a parish-wide elected official, i.e., the assessor of Avoyelles Parish. He is bright, intelligent and articulate. Mr. Thevenot intended to submit inaccurate information concerning the age of the trailer in hopes of securing a greater recovery than he could have secured by submitting the proper date of acquisition.

Mr. Thevenot furnished a list of contents of the mobile home damaged as a result of the flood. Included in that list was a TV set, table and chairs and cooking utensils. Those items also appear in Mr. Thevenot's demand as described in this lawsuit. Those items were removed from the mobile home by the best friend of Mr. Thevenot prior to any flood loss having been suffered. Mr. Thevenot now claims that he had no knowledge of his friend's protective action until after the suit was filed. The Court finds that assertion untenable. The claim made by Mr. Thevenot for contents loss is so unworthy of a good faith demand as to cause this Court to conclude that the claim is made with full knowledge of its inaccuracy and with design to defraud the Government.

Mr. Thevenot received for a flood loss experienced in 1979 $16,621. His continuous efforts to recover a substantial amount of money for the May 1983 loss claiming the post-1979 loss repairs had been perfected can best be described as ludicrous and intentionally misleading. Just one example of Thevenot's efforts to receive double and triple payments for repairs never perfected is the floor insulation. Thevenot was paid to replace the floor insulation after the 1979 and January 1983 floods. The evidence conclusively establishes that Thevenot never replaced any floor insulation.

Potential liability for violating the False Claims Act can be severe. A violator is liable to the Government for double the amount of damages sustained by the Government. 31 U.S.C. § 3729. Double damages are limited to the amounts paid out by reason of the false claim. *Aerodex,* 469 F.2d at 1011. The Government did not pay any money for the claim in connection with the May 1983 flood. The double damage penalty is not applicable.

██ A violator can be charged a $2,000 penalty for each false claim, 31 U.S.C. § 3729, and burdened with the costs of the civil action. The Government need not pay out any money to recover the $2,000 penalty.

"We think the trial court was mistaken in its apparent belief that no cause of action is stated under the False Claims Act if the Government has not paid money on the false claim. The Supreme Court in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), affirmed the opinion of a trial court which had held in part that a forfeiture could be recovered under the False Claims Act even where the Government had discovered the fraud before it paid the false claim.... [P]roof of actual damage is not a prerequisite to the recovery of a forfeiture under the False Claims Act.... [T]he investigation necessary to detect a false claim costs the Government money even if no money is paid on the claim." *United States v.*

*Ridglea State Bank,* 357 F.2d 495 (5th Cir.1966).

The Government seeks the imposition of the $2,000 penalty. Having found that Thevenot filed a false claim against the Government, the Court imposes the $2,000 penalty against Thevenot. The Court also holds Thevenot liable for the cost of this litigation.

### JUDGMENT

For the foregoing reasons, it is

ORDERED that, as to plaintiffs' claim against defendant, judgment is in favor of defendant and against plaintiffs. Plaintiffs' suit is DISMISSED with prejudice and at no cost to the defendant.

FURTHERMORE, judgment is in favor of defendant and against plaintiff on the False Claims Act counterclaim. The $2,000 penalty is imposed against the plaintiff. Plaintiff is to bear all the costs of this civil action.

SIGNED in Alexandria, Louisiana on 4 October 1985.