**PLYWOOD PROPERTY ASSOCIATES, et al., Plaintiffs,**

v.

**NATIONAL FLOOD INSURANCE PROGRAM, et al., Defendants,**

and

**UNITED STATES of America, Third–Party Plaintiff,**

v.

**PLYWOOD PROPERTY ASSOCIATES, et al., Third–Party Defendants.**

Civil Action No. 94–2390.

United States District Court, D. New Jersey.

June 18, 1996.

al Emergency Management Agency, and Third–Party Plaintiff, United States of America.

Herbert J. Marek, Wilkofsky, Friedman, Karel & Cummins, New York City, for Third–Party Defendant, Merit Adjustors, Inc.

## OPINION

ORLOFSKY, District Judge.

This matter comes before the Court on the cross-motions of Defendant, Director, Flood Emergency Management Agency ("FEMA"), an agency of the United States Government, Third Party Defendants, Plywood Property Associates, Saul Friedman, and Morris Friedman, and Third Party Defendant, Merit Adjustors, Inc. ("Merit"), for summary judgment pursuant to Fed.R.Civ.P. 56. The cross-motions present novel questions of law, unaddressed in this Circuit, involving the extent of coverage available under the Standard Flood Insurance Policy issued pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001 *et seq.*, and whether a Proof of Loss submitted by an insured under such a Policy constitutes a "claim" within the meaning of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* For the reasons set forth below, all three of the pending cross-motions for summary judgment in this case will be denied.

## I. *Procedural Background*

On May 19, 1994, Plaintiffs, Plywood Property Associates, Saul Friedman, and Morris Friedman,[1] filed a complaint for declaratory judgment against Defendants, Director of the Federal Emergency Management Agency and/or the National Flood Insurance Program ("FEMA"), and the Pennsylvania Lumbermans Mutual Insurance Company, to determine their right to insurance coverage under their respective policies for alleged flood damage to their commercial property. A Stipulation of Dismissal with Prejudice as to Defendant, Pennsylvania Lumbermans

Gerald J. Martin, Biebelberg & Martin, Millburn, NJ, for Plaintiffs and Third–Party Defendants, Plywood Property Associates, Morris Friedman, and Saul Friedman.

Faith S. Hochberg, United States Attorney, Joseph G. Braunreuther, Assistant United States Attorney, Chief, Civil Division, Newark, NJ, for Defendant, Director, Feder-

---

1. Plywood is a general partnership in which Saul Friedman and Morris Friedman are general partners. (S. Friedman Dep., p. 5, Plaintiffs' Appen- dix, Exhibit B). Plaintiffs, Plywood, Saul Friedman, and Morris Friedman, will be referred to collectively as "Plywood."

Mutual Insurance Company, was filed with this Court on November 27, 1995.

The United States of America, as Third Party Plaintiff, filed a third party complaint against Plaintiffs and Merit, Plaintiffs' claims adjustor, contending that Plaintiffs and Merit knowingly submitted false Proofs of Claim to them in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

FEMA now moves for summary judgment on Plaintiffs' declaratory judgment complaint. In addition, Plywood and Merit, as Third Party Defendants, have also separately moved for summary judgment on the United States' third party complaint. These three motions are presently before this Court.

## II. *Facts*

On December 11, 1992, Plaintiffs were the owners of real property and a warehouse building located at 33 Gregg Street in Lodi, Bergen County, New Jersey. On that date, a severe storm occurred in many areas of the northeastern United States, including Lodi, New Jersey, where over two inches of rain fell. A limited state of emergency was declared by Governor James Florio on December 11, 1992, in all of the counties of New Jersey, due to the intensity of the storm. Plaintiffs contend that their warehouse was damaged as a result of floods produced by this storm.

The Plaintiffs had insured their property with a Standard Flood Insurance Policy ("SFIP") issued by the National Flood Insurance Program ("NFIP"), which provides federally subsidized flood insurance benefits.[2] This policy was in force on December 11, 1992, the date of the storm. (Braunreuther Dec., Exhibit A). By way of two Proofs of Loss, dated February 9, 1993, and April 8, 1993, respectively, submitted by Plaintiffs' claims adjustor, Merit, Plaintiffs notified FEMA of their intention to recover under the SFIP for damages allegedly sustained during the storm. In their second and final Proof of Loss, Plaintiffs indicated that they sustained damages to their property in an amount of $484,000, and therefore sought to recover their policy limit of $250,000. By letter dated May 24, 1993, Plaintiffs were informed that their claim was denied by FEMA. (Complaint, ¶ 21).

## III. *Summary Judgment Standard*

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. *See Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Under this rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which the opposing party has

---

**2.** The NFIP has been administered by the Director of FEMA for the United States Government since 1979. *See* 42 U.S.C. §§ 4011, 4013(a); *Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515, 517 n. 1 (9th Cir.1988).

provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nonetheless, the moving party on the motion, bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

### IV. *FEMA's Motion for Summary Judgment on Plaintiffs' Complaint*

FEMA presents a two-pronged argument in support of its motion for summary judgment. FEMA first contends that the damages that Plaintiffs claim that their property sustained as a result of the storm on December 11, 1992, are not covered by the Standard Flood Insurance Policy ("SFIP"), and therefore, Plaintiffs cannot recover any proceeds under the policy. FEMA also asserts that, even if some of Plaintiffs' alleged damages are within the scope of the SFIP's coverage, their claims are unsupported by sufficient expert testimony contained in the summary judgment record. The Court will first consider FEMA's contention that Plaintiff's damages do not fall within the scope of the SFIP's coverage.

### A. *Coverage of the Standard Flood Insurance Policy*

The policy issued to Plaintiffs was a Standard Flood Insurance Policy issued by the National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001 *et seq.*, and administered by FEMA. (Braunreuther Dec., Exhibit A). The meaning and effect of the SFIP "depends on the meaning and effect of the legislation, especially the statute authorizing and directing the regulations and defining the policy coverage." *Chesapeake Ship Propeller Co. v. Stickney*, 820 F.Supp. 995, 997 (E.D.Va.1993).

The NFIP was created "because private insurance companies were unable to write flood insurance policies on an economically feasible basis and something had to be done to alleviate some of the extreme hardships suffered by flood victims." *Quesada v. Director, Federal Emergency Management Agency*, 753 F.2d 1011, 1014 (11th Cir.1985) (Tjoflat, J., dissenting).[3]

The SFIP is a "single-risk" insurance policy, as it only provides coverage for "direct physical loss by or from flood."[4] (Braunreuther Dec., Exhibit A). *See also Wagner v. Director, Federal Emergency Management Agency*, 847 F.2d 515, 521 (9th Cir. 1988); *Chesapeake*, 820 F.Supp. at 998. The term "flood," is defined in the SFIP as:

(a) A general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters.

(2) The unusual and rapid accumulation or runoff of surface waters from any source.

(3) Mudslides (i.e. mudflows) which are proximately caused by flooding as defined in subparagraph A–2 above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth carried by a current of water and deposited along the path of the current.

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water

---

**3.** Congressional intent is reflected in 42 U.S.C. § 4001(b) which states in relevant part that:

The Congress also finds that (1) many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and condition; but (2) a program of flood insurance with large-scale participation of the Federal Government and carried out to the maximum extent practicable by the private insurance industry is feasible and can be initiated.

**4.** "Direct Physical Loss By or From Flood" is defined in the SFIP to be "any loss in the nature of actual loss of or physical damage, evidenced by physical changes, to the insured property ... which is directly and proximately caused by a 'flood' ..." (Braunreuther Dec., Exhibit A).

exceeding the cyclical levels which result in flooding as defined in A–1 above.

(Braunreuther Dec., Exhibit A).[5]

The SFIP, however, excludes from its coverage certain losses as set forth below:

PERILS EXCLUDED: The Insurer shall not be liable for loss ... [caused by] land sinkage, land subsidence, landslide, gradual erosion, or any other earth movement *except such mudslides (i.e. mudflows) or erosion as is covered under the peril of flood.*

(Braunreuther Dec., Exhibit A (emphasis supplied)). Erosion "as is covered under the peril of flood," or "flood-related erosion," is defined in subpart (b) to the definition of "flood" in both the Regulations promulgated under the NFIA, as well as the SFIP. *See* 44 C.F.R. § 59.1.

In order for FEMA to prevail on its contention that Plaintiffs' damages do not fall within the scope of the SFIP's coverage, it must demonstrate that the undisputed facts reveal one of the following: (1) that Plaintiffs' alleged damages are not a "direct physical loss by or from [a] flood," as defined by the SFIP; or (2) that, even if Plaintiffs' damages are a "direct physical loss by or from [a] flood," such damages are specifically excluded from the coverage of the policy. Therefore, whether the alleged damages to Plaintiffs' property are covered by the SFIP depends on the cause of the damages.

Plaintiffs claim that the alleged damages to their property are a direct loss from a flood and are not specifically excluded from coverage. In support of their contention that the alleged damages to their property are covered by the SFIP, Plaintiffs rely on the expert opinion of Mr. Andrew Stein as to the causation of the damages to their property. (Stein Dep., p. 17, Plaintiffs' Appendix, Exhibit Y).

Although Mr. Stein did not prepare an expert report setting forth his opinion as to the causation of the alleged damages to Plaintiffs' property, his opinion was incorporated into the expert report of Mr. Sandor Weiss, for whom Mr. Stein acted as a consultant as to causation. (Stein Dep., p. 17, Plaintiffs' Appendix, Exhibit Y; Braunreuther Dec., Exhibit D). Mr. Weiss's report states that, "[d]ue to the recent flooding, water covered the rear area of the building. Thus the earth under the footings was washed away. Therefore, the footing of the foundation walls settled causing the cracking of structure of the perimeter walls ..." (Braunreuther Dec., Exhibit D).

In addition, at his deposition, Mr. Stein confirmed that it was his opinion that, after the earth under the footings of the warehouse was washed away, the footings of the foundation wall settled, causing the cracking of the structure of the perimeter walls. (Stein Dep., pp. 93–94, attached to Braunreuther Dec. as Exhibit Y). When asked at his deposition—"So it was the movement of the earth that caused cracking of the walls?"—Mr. Stein replied, "Correct." *Id.*

Plaintiffs thus contend that any damage to their property was caused by earth movement, which, in turn, was caused by the flood on December 11, 1992. The SFIP, however, specifically excludes damages resulting from any earth movements *other than those caused by mudslide or erosion.* (Braunreuther Dec., Exhibit A (emphasis supplied)).

---

5. The definition of "flood" in the Plaintiffs' SFIP is virtually identical to the definition set forth by the Director of FEMA, contained in the Regulations promulgated under the NFIA, which define "flood" as:

(a) A general and temporary condition of partial or complete inundation of normally dry land areas from:

(1) The overflow of inland or tidal waters.

(2) The unusual and rapid accumulation or runoff of surface waters from any source.

(3) Mudslides (i.e. mudflows) which are proximately caused or precipitated by accumulations of water on or under the ground.

(b) The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding as defined in (a)(1) of this section.

44 C.F.R. Chapter 1, Subchapter B, Insurance and Hazard Mitigation, Part 59, § 59.1 (1996).

■ Whether the SFIP covers damages caused by earth movements which are caused by a flood, but not specifically caused by mudslide or erosion, is an issue which has not yet been addressed in this Circuit. However, the majority of Circuits that have considered this precise issue have held that damages resulting from earth movement not caused by a mudslide or erosion are not covered by the SFIP, even if the earth movement would not have occurred but for the flood. *See Wagner v. Director, Federal Emergency Management Agency*, 847 F.2d at 522 ("federal flood insurance policies do not cover losses stemming from water-caused earth movements"); *Sodowski v. National Flood Insurance Program*, 834 F.2d 653, 656 (7th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988) (plaintiff not entitled to recover for structural damage caused by soil settlement regardless of the cause of the soil settlement); *West v. Harris*, 573 F.2d 873 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979) (same); *Chesapeake*, 820 F.Supp. 995. *But see Quesada*, 753 F.2d 1011.

In *Wagner*, the plaintiffs sought to recover under their SFIP for damages caused by a rainfall-induced landslide. The plaintiffs claimed that although the flood waters did not damage their property directly, the damages were caused by the shifting of earth which had been saturated by rainwater. The Court of Appeals for the Ninth Circuit held that plaintiffs' damages were not covered by the SFIP, since the shifting of the earth beneath the property was not caused by mudslide or flood-related erosion. *Wagner*, 847 F.2d at 522.

Likewise, in denying a plaintiff's claim for damages under the SFIP, the Court of Appeals for the Seventh Circuit in *Sodowski*, noted that:

> The cause of the structural damage to the Plaintiff's house was settlement of the ground beneath the house, caused by a change in consistency of the soil where the flood waters surrounded the foundation during the December, 1982 flood. The ground settlement in this case is clearly a type of land subsidence or earth movement.

*Sodowski*, 834 F.2d at 656 n. 3.

One Circuit, however, has chosen to take a more expansive view of the coverage of the SFIP. In *Quesada*, the Court of Appeals for the Eleventh Circuit held that the SFIP provided coverage for damages caused by earth compaction that "would not have occurred but for the flooding and did in fact occur simultaneously herewith[,]" whether or not the earth compaction was caused by flood-related erosion or mudslide. *Quesada*, 753 F.2d at 1014. The dissent in *Quesada*, however, argued that the unambiguous terms of the SFIP excluded from coverage all damages caused by "earth movement except such mudslide or erosion as is covered under the peril of flood." *Id.* at 1015 (Tjoflat, J., dissenting). The dissent stated that the majority's holding contravened the clear language of the policy in that the majority found that damages caused by earth movement which was proximately caused by flooding, regardless of whether the earth movement was caused by other than a mudslide or erosion, were covered under the policy. *Id.*

The Courts of Appeals for the Ninth and Seventh Circuits have expressly rejected the majority opinion in *Quesada*, and instead, have opted to follow the rationale of the Judge Tjoflat's dissent. *See Wagner*, 847 F.2d at 522; *Sodowski*, 834 F.2d at 659 (rejecting Quesada's expansive reading of the SFIP as "an act of judicial activism"); *West*, 573 F.2d 873 (pre-*Quesada* case limiting scope of SFIP coverage to earth movements caused by flood-related erosion or mudslide). *See also Chesapeake*, 820 F.Supp. at 1000 ("[t]his Court does not find *Quesada*, which has been negatively treated by several federal courts, compelling"); *Moyer v. Federal Emergency Management Agency*, 721 F.Supp. 235 (D.Ariz.1989). Likewise, this Court joins the other Circuits which have rejected *Quesada*'s expansive reading of the SFIP, and "does not find *Quesada*, which has been negatively treated by several federal courts, compelling." *See Chesapeake*, 820 F.Supp. at 1000.

■ Therefore, the damages to Plaintiffs' property are only covered by the SFIP if

such damages were caused by earth movement which is the result of flood-related erosion, or "erosion as is covered under the peril of flood," or mudslide. *See Smoak v. Independent Fire Ins. Co.*, 874 F.Supp. 110 (D.S.C.1994) (damages covered by SFIP where collapse of land suddenly caused by high level of water in nearby lake which rose to a point where it reached the foundation of the property). The question thus remains whether the Plaintiffs can demonstrate that such earth movement was caused by flood-related erosion or mudslide in order to bring the damages within the scope of the SFIP.

FEMA contends that such damage, if caused at all by earth movement resulting from the December 11, 1992, storm, was not the result of flood-related erosion and, therefore, cannot be covered by the SFIP. Flood-related erosion, within the meaning of the SFIP, is defined as:

> The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels or suddenly caused by an unusually high water level in a natural body of water, accompanied by a severe storm, or by an unanticipated force of nature, such as flash flood or an abnormal tidal surge, or by some similarly unusual and unforeseeable event which results in flooding.

44 C.F.R. § 59.1.

FEMA argues that any earth movement occurring on Plaintiffs' property could not be the result of flood-related erosion since Plaintiffs' property is not on "land along the shore of a lake or other body of water" and therefore, any erosion could not have been caused by "an unusually high water level in a natural

body of water," as required for coverage under the SFIP. *See id.* Instead, FEMA contends that the alleged damage to Plaintiff's property is not covered by the SFIP, since any water on Plaintiffs' property came from an overflowing drain pipe in a drainage ditch, and not a natural body of water. *See Chesapeake*, 820 F.Supp. at 1000–1001 (erosion caused by flood water build-up in drainage ditch held not to be "flood-related erosion" under the SFIP).

In contrast, the Plaintiffs contend that the damage to their property was caused by earth movement which resulted from "erosion as is covered under the peril of flood." (Braunreuther Dec., Exhibit A). Plaintiffs assert that there is a natural body of water flowing from the Saddle River through their property which was caused to overflow by the December 11, 1992, storm.[6] Plaintiffs argue that such overflow eroded the land on their property leading up to the warehouse.[7]

Plaintiffs contend that, since their property is "along the shore of . . . [the] body of water," the erosion of this land amounts to "erosion as is covered under the peril of flood" within the meaning of the SFIP. Accordingly, the following genuine issues of material fact exist: (1) whether the alleged damages to Plaintiffs' property were caused by the storm on December 11, 1992; (2) whether, in fact, Plaintiffs' property is on the shore of a brook, or other natural body of water; and (3) whether the earth movement which the Plaintiffs contend caused alleged damage to their property was caused by an unusually high level of water in that body of water.

The Court finds that there is sufficient evidence contained in the summary judgment

---

6. Plaintiffs rely on the Declaration of Lawrence M. Fox, Esq., to support this contention. In his Declaration, Mr. Fox states that:

> On or about April 3, 1996, I drove to 33 Gregg Street, Lodi, New Jersey, and found the body of water located in front of the warehouse building . . . I followed said body of water until it went underground, passing under a building and under Garibaldi Street, exiting on the south side of Garibaldi Street, continuing on as an open brook . . . I followed said brook in my car to a point where it opened up from a tunnel running adjacent to the north side of

> Graham Lane in Lodi, New Jersey and continued to enter into Saddle River, just west of the Arnot Street bridge . . . I went to the Bergen County Hall of Records, and found said brook on the tax maps . . . The body of water that I followed is labeled on the tax maps as a brook . . . and not as a drainage ditch.

7. In his Second Declaration, Isaac Soskin states that he "never saw the amount of water 'lapping up' against the warehouse in this area as high as the flood water was when [he] observed it on December 11th or December 12th."

record from which a reasonable fact-finder could conclude that the alleged damage to Plaintiff's property was the result of flood-related erosion caused by the December 11, 1992, storm, and therefore, that the damages to Plaintiffs' property may be covered by the SFIP. Therefore, this Court cannot find as a matter of law, that the alleged damages to Plaintiff's property are not covered by the SFIP.

### B. *Plaintiffs' Expert Testimony*

■ FEMA next argues that, regardless of whether the Plaintiffs' claim for damages may be covered by the SFIP, Plaintiffs have failed to present the requisite expert testimony to prove that the damages claimed were caused by the December 11, 1992, flood, or that such damages were reasonable and necessary to repair the flood damage. FEMA contends that Plaintiffs rely solely on the testimony of two alleged experts in order to establish their claim for damages, and that neither of the experts is qualified to offer their respective opinions. Accordingly, FEMA argues that Plaintiffs cannot establish their claim for damages as a matter of law.

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. As a threshold consideration, the Plaintiffs contend, and the Court agrees, that the issues of the cause of the alleged damages and the magnitude of repair work necessitated by any damages to Plaintiffs' warehouse are issues about which "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue ..." Fed.R.Evid. 702.

Rule 702 sets forth two requirements for the admission of expert testimony. The first requirement "is that a witness proffered to testify to specialized knowledge must be an expert." *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir.1994), *cert. denied sub nom., General Elec. Co. v. Ingram*, —— U.S. ——, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995). The second requirement is that the expert testimony must, in fact, assist the trier of fact in rendering its decision. *Id.*

The first requirement has been interpreted liberally by the courts. *Id.* Exclusion of such testimony is not proper "simply because the experts [do] not have the degree or training which the district court ... [thinks] would be most appropriate." *Id.* (citation omitted). In determining whether to qualify an individual as an expert, the courts "have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." *Id. See Hammond v. International Harvester Co.*, 691 F.2d 646, 652–53 (3d Cir.1982) (holding that engineer, whose only qualifications were sales experience in the field of automotive and agricultural equipment and teaching high school automobile repair, could testify in a products liability action involving tractors); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87–88 (3d Cir.1979) (holding that expert could testify that unguarded elevator buttons constituted design defect despite expert's lack of specific background in design and manufacture of elevators); *Wilkinson v. Rosenthal & Co.*, 712 F.Supp. 474, 478 (E.D.Pa.1989) (expertise may be based upon practical experience).

A review of the qualifications of Plaintiffs' proffered experts reveals that both experts can satisfy the threshold of expertise required by Rule 702. First, Plaintiffs seek to offer the testimony of Mr. Andrew Stein as an expert regarding the causation of the structural damage to the warehouse.[8] Plaintiffs also seek to offer the testimony of Mr. Sandor Weiss, as an expert regarding the

---

8. Mr. Stein testified at his deposition that he graduated from Leningrad University in Russia with a degree in structural engineering in 1966, then worked as a Senior Structural Engineer and Chief Structural Engineer in Russia before com- ing to the United States in 1991, where he then worked as Mechanical Engineer before he was hired by Mr. Sandor Weiss as a consultant. (Stein Dep., pp. 22–28, attached to Braunreuther Dec. as Exhibit Y).

magnitude of damages sustained by their property.[9]

■ This Court cannot find as a matter of law that either Mr. Stein or Mr. Weiss lacks the requisite specialized knowledge or expertise to qualify to testify as an expert in the subject matter areas in which Plaintiffs seek to present their opinions under the standards set forth in Rule 702. Prior qualification as an expert witness, specialized degrees, licenses or publications in their field, while all commendable, are not required to be possessed by every witness acting as an expert. *See In re Paoli Railroad Yard PCB Litigation,* 35 F.3d at 741; *Hammond v. International Harvester Co.,* 691 F.2d at 652–53.

FEMA also contends that, notwithstanding the qualifications of Plaintiffs' experts, the experts' testimony is insufficient to establish the cause and magnitude of the damages to Plaintiffs' property, as well as the cost to repair the property.

Mr. Stein has testified that he inspected Plaintiffs' property on December 24, 1992, approximately two weeks after the storm. He stated that based upon his inspection of the warehouse building, and the property surrounding the building, it was his opinion that the December 11, 1992, flood eroded the soil beneath the building which resulted in the cracks in the exterior perimeter walls of the building. He further testified that based upon his experience, he was able to determine which cracks in the building predated the flood, and which were caused by the flood. (Stein Dep., pp. 67–68, attached to Braunreuther Dec. as Exhibit V).

Although Mr. Stein did not prepare an expert report setting forth his opinion as to the causation of the alleged damages to Plaintiffs' property, his opinion was incorporated into the expert report of Mr. Sandor Weiss, for whom Mr. Stein acted as a consultant as to causation. (Stein Dep., p. 17, Plaintiffs' Appendix, Exhibit Y; Braunreuther Dec., Exhibit D). Mr. Weiss's report states that, "[d]ue to the recent flooding, water covered the rear area of the building.

Thus, the earth under the footings was washed away. Therefore, the footing of the foundation walls settled causing the cracking of structure of the perimeter walls ..." (Braunreuther Dec., Exhibit D). Mr. Stein also confirmed that it was his opinion that, after the earth under the footings of the warehouse was washed away, the footings of the foundation wall settled, causing the cracking of the structure of the perimeter walls. (Stein Dep., pp. 93–94, attached to Braunreuther Dec. as Exhibit Y). When asked at his deposition—"So it was the movement of the earth that caused cracking of the walls?"—Mr. Stein replied, "Correct." *Id.*

Plaintiffs' other proffered expert, Mr. Weiss, testified that, based upon his professional experience, and upon the information provided to him by Mr. Stein after he inspected Plaintiffs' property, he was able to estimate the scope and cost of the repair work necessitated by the damages allegedly caused by the flood of December 11, 1992, with a reasonable degree of probability. (Weiss Dep., pp. 110–112, attached to Braunreuther Dec. as Exhibit U; Weiss Report, attached to Braunreuther Dec. as Exhibit E).

Although FEMA may disagree with the conclusions reached by Mr. Stein and Mr. Weiss, it may cross-examine these witnesses and offer its own expert testimony to the contrary in an attempt to discredit them. Any inaccuracies in Mr. Weiss's methods of calculating the magnitude of damages must go to the weight, and not to the admissibility, of his testimony, and are proper matters for cross-examination. Accordingly, the Court does not find that the testimony of Mr. Stein and Mr. Weiss is insufficient as a matter of law to meet Plaintiff's burden at trial. For the reasons set forth above, FEMA's motion for summary judgment will be denied.

V. *Plywood's and Merit's Motion's for Summary Judgment*

■ The United States of America has filed a third-party complaint against Plaintiffs, as well as against Merit Adjustors, Inc. ("Merit"), as third-party Defendants, alleging

---

9. Mr. Weiss testified at his deposition that he graduated from City College with a bachelor's degree in architecture in 1973, and that he has worked as an architect and designer since that 1975. (Weiss Dep., pp. 107–109, attached to Braunreuther Dec. as Exhibit U).

violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* Specifically, the United States contends in its third-party complaint that Plywood and Merit knowingly submitted a false claim for payment upon their submission of the Proof of Loss. Plywood and Merit have moved for summary judgment on the United States' third-party complaint.

The False Claims Act provides, in pertinent part, that a person shall be liable under the Act if he or she "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval[.]" 31 U.S.C. § 3729(a)(1). Therefore, the issues raised in the motions of Plywood and Merit are whether there is sufficient evidence contained in the summary judgment record to support an inference by a reasonable fact-finder that: (1) the Proof of Loss submitted to FEMA constituted a "claim," within the meaning of the False Claims Act; (2) the Proof of Loss claim was false or fraudulent; and (3) Plywood and Merit had knowledge of the falsity of the Proof of Loss claim.

Because I find that the summary judgment record presented to the Court contains sufficient evidence from which a reasonable fact-finder could conclude that Plywood and Merit knowingly presented a false or fraudulent claim for payment to the United States, the respective motions of Plywood and Merit for summary judgment will be denied.

> As defined by the False Claims Act, a 'claim' includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c). With respect to the scope of the term "claim," under the False Claims Act, the United States Supreme Court has stated that the Act "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause

the Government to pay out sums of money." *United States v. Neifert–White Co.,* 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968).

"Claims" within the meaning of the Act have taken many forms. *See, e.g., United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) (invoice); *Peterson v. Weinberger,* 508 F.2d 45 (5th Cir.), *cert. denied,* 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975) (claim for Medicare reimbursement); *Neifert–White Co.,* 390 U.S. 228, 88 S.Ct. 959 (Medicaid application); *United States v. Board of Education of City of Union,* 697 F.Supp. 167 (D.N.J.1988) (application for federal construction grant); *Pena v. United States Department of Agriculture, Food and Nutrition Service,* 811 F.Supp. 419 (E.D.Ark.1992) (request for redemption of food stamps).

A Proof of Loss claim submitted to FEMA for the collection of insurance benefits under an SFIP is clearly an "attempt[ ] to cause the Government to pay out sums of money[,]" *see Neifert–White Co.,* 390 U.S. at 233, 88 S.Ct. at 962, and therefore, is a "claim" within the meaning of the Act. *See Thevenot v. National Flood Insurance Program,* 620 F.Supp. 391, 394 (W.D.La.1985) (claim for insurance benefits under the NFIP held to constitute "claim" within the meaning of the False Claims Act).

■ Having found that a claim for benefits under the NFIP is a "claim," within the meaning of the False Claims Act, the next issue this Court must consider is whether a reasonable fact-finder could find that the Proof of Loss submitted to FEMA was false or fraudulent and knowingly presented by Plywood and/or Merit. In other words, in order to be liable under the Act, a party must have knowingly presented a claim that was known to be false. *Hagood v. Sonoma County Water Agency,* 929 F.2d 1416 (9th Cir.1991).

> As defined by the False Claims Act, the terms "knowing" and "knowingly" mean that a person, with respect to information—
> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information[.]

31 U.S.C. § 3729(b). Although the Act also emphasizes that "no proof of specific intent to defraud is required," see id., "[i]nnocent mistakes or negligence are not actionable under [the Act]." *Hindo v. University of Health Sciences*, 65 F.3d 608, 613 (7th Cir. 1995), *cert. denied*, — U.S. —, 116 S.Ct. 915, 133 L.Ed.2d 846 (1996).

Both Plywood and Merit contend that they are entitled to summary judgment on the United States' third-party complaint, asserting that the United States has failed to set forth in the summary judgment record sufficient evidence from which a fact-finder could conclude that either party knowingly submitted a false claim. The Court will consider their respective motions for summary judgment separately.

The United States first asserts in its third-party complaint that Plywood inflated the value of the alleged losses sustained to its property as a result of the flood in order to get a false claim paid by the government. United States' Third-Party Complaint, Count One ¶ 37. Plywood, however, contends that the undisputed evidence presented to the Court could not support a finding that it knowingly submitted a false or fraudulent claim.

When viewing the evidence in the light most favorable to the non-moving party, as this Court must when ruling on a summary judgment motion, I find that the United States has set forth sufficient evidence from which a finder of fact could infer that the United States has met its burden of estab-

lishing that the Proof of Loss submitted by Plywood was false and that Plywood knew that the Proof of Loss contained false information, or that Plywood acted in deliberate ignorance or reckless disregard of the truth or falsity of the information contained in the Proof of Claim.[10]

Summary judgment on the United States' claim against Plywood is inappropriate at this juncture because there are a number of factual disputes reflected in the record which are both genuine and material to the issue of whether Plywood knowingly submitted a false or fraudulent claim in violation of the False Claims Act. The parties dispute whether the Proof of Loss was false or fraudulent, in other words, whether it sought reimbursement for nonexistent or preexisting damages to the property. More importantly, for purposes of the False Claims Act, the parties also dispute whether Plywood knew that the amount of reimbursement requested in the Proof of Loss included an amount for any nonexistent or preexisting damage.

While Plywood asserts that all of the damages included in the Proof of Claim were caused by the flood on December 11, 1992, the United States contends that Plywood knowingly included in the amount of recovery sought an amount to cover damages to the property which either predated the flood, or do not exist at all.[11] The Court finds that the United States has identified sufficient evidence in the summary judgment record from which a reasonable fact-finder could conclude that Plywood's submission of the Proof of Claim was in violation of the False Claims Act. Accordingly, in light of the gen-

---

10. Although Plywood and Merit both argue that the United States must prove its claim under the False Claims Act by clear and convincing evidence, the Act, as amended in 1986, clearly states that "[i]n any action brought under section 3730 [the civil enforcement provision of the Act], the United States shall be required to prove all essential elements of the cause of action, including damages, by a *preponderance of the evidence*." 31 U.S.C. § 3731(c) (emphasis supplied). The Court finds, however, that under either standard of proof, genuine issues of material fact exist as to whether the United States can establish a claim against Plywood or Merit under the Act.

11. In support of this contention, FEMA relies in part upon the following evidence contained in the summary judgment record:

● Letter, dated October 26, 1992, to Mr. Morris Friedman, from Marcus Associates, indicating that "the building as I am sure you know, is in disrepair, and will require a substantial investment on a new user's part to renovate/modernize it." (Braunreuther Dec., Ex. I).

● Letter, dated October 29, 1991, to Mr. Isaac Soskin of Plywood, from Preferred Industrial Properties, indicating that the "property has to be cleaned up and certain repairs have to be made to the building." (Braunreuther Dec., Ex. J).

● Plywood's Answers to Defendant FEMA's First Set of Interrogatories indicating that "[t]here was no damage to the masonry at the left corner of the premises prior to the flood of December 11, 1992[,]" and that "[t]here was no cracking of the left side rear wall and rear

uine issues of material fact described above, Plywood's motion for summary judgment on the United States' third-party complaint will be denied.[12]

The United States also asserts in its third-party complaint that "Merit Adjustors, Inc. knowingly presented and/or caused to be presented a false or fraudulent claim for $250,000.00 ... to cover the alleged damage to the structure located at 33 Gregg Street, Lodi, New Jersey which was claimed to have occurred on or about December 11, 1992." (Third–Party Complaint, Count Four ¶ 53). Merit has moved for summary judgment on the claims against it in the United States' third-party complaint. Merit argues that it is entitled to summary judgment since the undisputed facts contained in the summary judgment record do not reveal that it knowingly submitted a false or fraudulent claim for payment to the United States in violation of the False Claims Act.

For the reasons set forth above, the Court finds, as a threshold matter, that there is a factual dispute which is both genuine and material as to whether the Proof of Loss contained information which was false or fraudulent. Thus, the remaining issue to be examined in analyzing Merit's motion for summary judgment is whether there is sufficient evidence contained in the summary judgment record from which a fact-finder could determine that Merit knowingly submitted the Proof of Loss.

On or about December 11, 1992, Merit was retained as the public adjustor for Plywood. Merit and Plywood entered into a contingency fee agreement, whereby Merit was to receive 12.5% of any amount received pursuant to the Proof of Loss submitted under the SFIP. Although Merit argues that, as an adjustor, it merely acted as a conduit between Plywood and FEMA for the submission of the claim, there is evidence contained in the summary judgment record which reveals that Mr. Simon Fensterheim, the owner and principal of Merit, may have been very much involved in several aspects of the preparation and submission of the claim.[13] Even if Merit did not have actual knowledge of the veracity of the information contained in the Proof of Loss, Merit could still be liable under the Act if it acted "in deliberate ignorance" or "in reckless disregard of the truth or falsity of the information" contained in the Proof of Loss. *See* 31 U.S.C. 3729(b)(2), (3).

---

wall prior to the flood of December 11, 1992." (Braunreuther Dec., Ex. K ¶¶ 11–12).

● Declaration of Joseph A. Atallah, former employee of Plywood, stating that the vertical cracks on the upper left corner of the face of the building were present prior to the December 11, 1992, flood, and that "[a]s a general matter the building was not in good condition when operations stopped and the building was up for sale before the flood in December 1992." (Braunreuther Dec., Ex. L ¶¶ 11, 14).

● Letter, dated December 12, 1995, to FEMA's attorney, Joseph Braunreuther, Esq., from Plywood's attorney, Gerald J. Martin, Esq., amending Plywood's "answers to interrogatories to indicate that there was a minor crack located at the top of the front left side corner of the subject premises (facing the warehouse building from Gregg Street) which pre-existed the flood of December 11, 1992." (Braunreuther Dec., Ex. O).

● Engineering Report of Paul Zamrowski Associates, Inc., indicating that cracking in the building "could have been caused only by a horizontal force/impact on the inside of the wall." (Braunreuther Dec., Ex. G, p. 3).

● Final Proof of Loss Statement, dated April 8, 1993, indicating net amount claimed to be $250,000. (Braunreuther Dec., Ex. C).

12. Plywood contends that assuming, *arguendo*, even if it knowingly made false or fraudulent claims in the Proof of Claim, such misrepresentations were not material since it could only receive the policy limit of the SFIP, which was $250,000, and the United States has not set forth any evidence that the property was worth less than that amount. The United States responds, however, that not only did Plywood inflate the value of its property on the proof of claim, but it also sought reimbursement for pre-existing damages to the property. The United States also asserts that the amount of any damages which may have been caused by the flood did not meet or exceed Plywood's policy limit. To the extent that the United States argues that Plywood sought reimbursement for damages which predated the flood, Plywood's alleged misrepresentations are material, in that they may have an effect upon any loss sustained by FEMA occasioned by Plywood's alleged misrepresentations.

13. FEMA points to the following evidence contained in the summary judgment record which reveals that Mr. Fensterheim had considerable involvement in the preparation and submission of the claim:

● Mr. Fensterheim's acknowledgment that "his responsibility and role [was to] advise and assist [Plywood] in the preparation and presentation of its claim." (Fensterheim Aff. ¶ 5).

● The contingency fee arrangement between Plywood and Merit provided that Merit was to

Therefore, I find that the United States has supplied this Court with sufficient evidence from which a reasonable fact-finder could conclude that Merit knowingly presented, or caused to be presented a false or fraudulent Proof of Claim in violation of the False Claims Act.[14]

Accordingly, for the reasons set forth above, FEMA's motion for summary judgment on Plaintiffs' complaint, Plywood's motion for summary judgment on the United States' third-party complaint, and Merit's motion for summary judgment on the United States' third-party complaint will all be denied. This Court will enter an appropriate order.

receive 12.5% of any amount recovered by Plywood.

- Mr. Fensterheim's acknowledgments that he had the responsibility to develop the necessary substantiation to support the claim, and that he was told by Mr. Soskin that the walls to the property were damaged before the flood by a vehicle and other earlier stresses. (Fensterheim Dep., p. 18, attached to Braunreuther Dec. as Exhibit Y).

- Mr. Fensterheim met with FEMA's public adjustor and inspected the property on January 4, 1993, and represented Plywood in discussions with FEMA. (Jeffrey G. Davis Dec., attached to Braunreuther Dec. as Ex. Z).

- Mr. Fensterheim retained an expert, Robert N. Layne, who estimated that the necessary repairs to the property would cost $176,895,85, yet submitted another estimate of Sandor Weiss which well exceeded the Layne estimate in order to please Plywood since he was told that Plywood "didn't like" the Layne report. (Braunreuther Dec., Ex. aa; Fensterheim Dep., pp. 114, 128).

- Mr. Fensterheim signed the Proof of Loss and indicated on the Proof of Loss form that Merit has an interest in any recovery received by Plywood from FEMA. (Braunreuther Dec., Ex. C).

14. See note 10, supra.